**Frank M. PICCOLELLA, Sr., Appellant**

v.

**LYCOMING COUNTY ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 28, 2009.

Decided Dec. 4, 2009.

Frank M. Piccolella, Sr., appellant, pro se.

Karl K. Baldys, Williamsport, for appellee, Lycoming County Zoning Hearing Board.

Benjamin E. Landon, Williamsport, for appellee, Laurel Hill Wind Energy, LLC.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this zoning appeal, Frank M. Piccolella, Sr. (Objector), representing himself,

asks whether the Lycoming County Zoning Hearing Board (ZHB) erred in dismissing his appeal from the Lycoming County Zoning Administrator's (Zoning Administrator) grant of a zoning permit to Laurel Hill Wind Energy, LLC (Laurel Hill). Laurel Hill applied for the zoning permit in order to construct a proposed wind energy facility. Objector argues the ZHB erred in dismissing his appeal where Laurel Hill's permit application did not satisfy the applicable requirements of the Lycoming County Zoning Ordinance (zoning ordinance). Objector also claims the ZHB violated his right to due process. Discerning no merit in these contentions, we affirm.

In February 2008, Laurel Hill filed a detailed application for a zoning permit for a project it refers to as the "Laurel Hill Wind Energy Project." Specifically, Laurel Hill proposed to construct a 70.5 megawatt wind-powered electric-generating, transmitting and interconnecting facility consisting of: 35 individual wind turbines located along Laurel Hill Ridge; an approximate two-mile long, 34.5 kilovolt, overhead transmission line; and, a new switch yard and substation that would provide interconnection to the existing electric transmission system of the Pennsylvania Electric Company. The project would occupy an area of approximately 706 leased acres located in both the Agricultural and Resource Protection Districts in Jackson and McIntyre Townships, Lycoming County.

Laurel Hill's zoning permit application included: a 19-page community and environmental impact analysis; three tables showing estimated project expenditures; an evaluation of the indirect economic activity from construction and annual economic contribution of the project; a FEMA map; and, several appendices, which include a general site plan, a per-mit/approval project schedule, a hydrologic evaluation of wind turbine construction, a hydrogeologic evaluation plan summary; a report on the effect of wind development on local property values; and, a draft emergency response plan. In addition to the application itself, Laurel Hill provided the Zoning Administrator with a decommissioning plan, a resolution of approval from the McIntyre Township Board of Supervisors with an attached Wind Fund Agreement, a Pennsylvania Game Commission Wind Energy Voluntary Cooperation Agreement, and supplemental information regarding proposed routes of construction and access roads.

After his review, the Zoning Administrator approved the application in May 2009. Among other things, the Zoning Administrator explained:

[P]lease be aware that pursuant to Section 3230C.1(2)(a) of the [zoning ordinance], evidence of permits and conditions to satisfy all applicable [s]tate and [f]ederal agencies is required prior to the issuance of a[c]ertificate of [o]ccupancy. Land development approval is required in accordance with [zoning ordinance] Section 10130C.

The issuance of this permit evidences my approval of your [a]pplication conditioned on satisfying the requirements noted above. . . .

Certified Record (C.R.), ZHB Hearing, 7/23/08, Zoning Administrator Ex. 13; ZHB Op., Finding of Fact (F.F.) No. 11.

Shortly thereafter, Objector appealed the Zoning Administrator's approval of the permit, asserting Laurel Hill's application contained 28 deficiencies. Among other things, Objector argued the application did not satisfy Section 3230C.1 (relating to wind energy facilities) and Section 10240 (relating to general site plan requirements) of the zoning ordinance. A hearing ensued before the ZHB, at which Objector

provided an explanation of the alleged deficiencies in Laurel Hill's permit application, and the Zoning Administrator presented numerous documents relating to his review of Laurel Hill's permit application.

After hearing, the ZHB issued a decision in which it determined Laurel Hill's application was sufficiently complete to warrant the Zoning Administrator's issuance of the permit. The ZHB specifically found, as part of the permit review process, Laurel Hill submitted, and the Zoning Administrator reviewed, information required by the zoning ordinance including, but not limited to, a site plan, a community and environmental impact analysis, a detailed explanation of tower safety, operations, setbacks, tower locations, signal interference, liability insurance, host municipality agreements, and a decommissioning agreement.

The ZHB further found, although Objector alleged various deficiencies in the information provided, it was clear that Laurel Hill's detailed and specific plans were "consistent with the procedures outlined by the requirements of the [z]oning [o]rdinance, and, in fact, [were] substantially complete." F.F. No. 17. The ZHB also found it clear from the record that, through the permit review process, the Zoning Administrator elicited clarifications and additional information from Laurel Hill to further detail and explain the project. In addition, the ZHB found:

> 19. The substantial, competent and credible evidence of record shows that the [a]pplication itself is sufficiently complete for the issuance of a permit, although details of the project may be subject to change under the supervision of the Zoning Administrator and the Planning Commission for compliance with the terms of the [z]oning [o]rdinance and the [p]lanning [c]ode.

> 20. The [ZHB] does not find credible the assertion of [Objector] that the [a]pplication is so incomplete, so lacking in detail, so vague or ambiguous as to preclude [z]oning review for the permitted use described by [Section 3230C.1 of the zoning ordinance], or that the Zoning Administrator failed to undertake the necessary review. To the contrary, the Zoning Administrator['s][e]xhibits above-listed credibly show that such assertions are without merit by detailing information obtained, clarifications requested, conditions to be met, and a process of ongoing review.

F.F. Nos. 19–20. The ZHB also determined:

> 6. It is clear, based upon the undisputed facts of record, that the [p]ermit [a]pplication filed by Laurel Hill describes a wind energy facility to be located in a Resource Protection and Agricultural Zone, as those Zones are defined by the [zoning ordinance]. Moreover, it is clear that a wind energy facility is a permitted use in both Resource Protection and Agricultural Zones under the terms of the [zoning ordinance]. [Section 3230C.1 of the zoning ordinance; Table of Uses Section 3120].

> 7. [Zoning] [o]rdinance Section 3230C.1 requires the Zoning Administrator to confirm that the [a]pplicant has submitted sufficient information to allow for the supervision of this permitted use.

> 8. Indeed, the [p]ermit [a]pplication itself, which allows for the issuance of a permit to commence the project, is not intended to include all the information necessary for the Zoning Administrator to issue a certificate of occupancy, the latter of which would be required before the facility could begin operation.

> 9. Section 3230C.1 has few specific prohibitions, but rather, describes requirements for the submission of information

by the [a]pplicant and the review of that information by the Zoning Administrator to allow for the effective use of listed supplemental controls.

10. [Objector] [has] shown no fatal omission or inconsistency of this [a]pplication, or the process of review performed by the Zoning Administrator, with the [zoning] [o]rdinance requirements, or that [Laurel Hill] intends to construct or establish a use of a character or a specific design which is prohibited by the [z]oning [o]rdinance.

11. The [ZHB] cannot conclude, based upon the evidence submitted, that the [a]pplication approved is so deficient so as to preclude the likelihood that through the process of review, concerns such as tower safety, operations, set backs, preservation of scenic areas, avoidance of signal interference, water quality, wildlife protection, maintenance of liability insurance, proper agreements with host municipalities, and decommissioning, have not or will not be satisfied.

12. The [ZHB] must emphasize that its authority to review the issuance of the [p]ermit by the Zoning Administrator herein does not allow the [ZHB] to employ the special exception criteria of [zoning] [o]rdinance Section 10310. The proposed use is, by definition, permitted by right.

13. Rather, the [ZHB] is limited in its analysis to consider the Zoning Administrator's compliance with [zoning] [o]rdinance requirements. [See] Section 320C.1 and [zoning] [o]rdinance Sections 10250 and 10260. [See] [Section 909.1(a) of the Pennsylvania Municipalities Planning Code (MPC) [1]]. In reviewing these sections, and taking into account the intent of the [zoning] [o]rdinance overall in permitting the requested use, the [ZHB] can find no substantial error, failure to follow procedures, misapplication of [zoning] [o]rdinance requirements, or abuse of discretion by the Zoning [Administrator], or lack of necessary information, which would require that the [ZHB] reverse his decision to issue the [z]oning [p]ermit.

ZHB Op. Concls. of Law Nos. 6–13. Thus, the ZHB upheld the Zoning Administrator's grant of the zoning permit application and dismissed Objector's appeal.

Objector appealed to the Court of Common Pleas of Lycoming County (trial court), again asserting Laurel Hill's application was deficient. Objector also claimed the ZHB violated his due process rights by denying him the opportunity to present evidence and argument. Objector also claimed his due process rights were violated because of an alleged "conflict of interest," i.e., that the same law firm represents both Laurel Hill and Lycoming County. In addition, Objector argued Laurel Hill lacked standing to apply for the permit.

Without taking additional evidence, the trial court issued an opinion in which it rejected Objector's contentions, and affirmed the ZHB's grant of the permit to Laurel Hill. This appeal by Objector followed.

■ On appeal,[2] Objector assigns error in the ZHB's grant of Laurel Hill's permit

**1.** Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a).

**2.** Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.,* 873 A.2d 807 (Pa.Cmwlth.), *appeal denied,* 585 Pa. 692, 887 A.2d 1243 (2005).

application on the grounds the application was deficient. He also asserts his due process rights were violated because of the alleged conflict of interest mentioned above. Additionally, Objector argues the ZHB denied him a full opportunity to present evidence and argument, also resulting in a violation of his right to due process.

Initially, we note, in zoning cases the ZHB is the fact-finder, with exclusive province over matters of credibility and evidentiary weight. *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of City of Phila.*, 815 A.2d 652 (Pa.Cmwlth. 2002). This Court will not engage in fact-finding or disturb the ZHB's credibility determinations on appeal. *Id.*

## I. Alleged Deficiencies in Permit Application

Objector first asserts the ZHB erred in determining Laurel Hill's permit application was sufficiently complete to satisfy the requirements of Section 10240 of the zoning ordinance ("General Site Plan Requirements"). Specifically, Objector maintains Laurel Hill's application did not include: the location of transmission line poles, private roads and other buildings; information regarding the intensity of lighting required by the Federal Aviation Administration (FAA); the gross square footage of buildings depicted on the site plan; the amount of open space per lot; stormwater management and construction and site erosion plans; and, plans for sanitation and storm drainage facilities. Objector also contends Laurel Hill did not provide specific information relating to turbine type or a detailed economic impact analysis in violation of Section 3230C.1 of the zoning ordinance ("Wind Energy Facility").

Objector asserts that before the ZHB he identified 28 errors or omissions in Laurel Hill's application, all of which Laurel Hill had to fulfill prior to permit approval. Objector points out that, in its decision, the ZHB agreed Laurel Hill's permit application was deficient, but granted the application despite these acknowledged deficiencies. In so doing, Objector argues the ZHB disregarded the zoning ordinance requirements and, therefore, abused its discretion in granting the permit.

Although Objector points out that he listed 28 alleged deficiencies in his appeal of the Zoning Administrator's approval of the permit, the only alleged deficiencies Objector identifies in this appeal are those mentioned above. As such, we will confine our review to an analysis of the eight deficiencies specifically identified. *See Fleeher v. Dep't of Transp., Bureau of Driver Licensing*, 850 A.2d 34 (Pa.Cmwlth. 2004) (when issues are not properly raised and developed in briefs and the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits). Upon review of the deficiencies specifically identified, we discern no error in the ZHB's affirmance of the Zoning Administrator's grant of the permit.

### A. Relevant Ordinance Provisions

Objector claims Laurel Hill's permit application was deficient because it did not contain sufficient information to satisfy Sections 10240 and 3230C.1 of the zoning ordinance, which state, in relevant part:

**3230C.1 Wind Energy Facility**

\* \* \* \*

2. Site plan specifications that supplement Section 10240 of the [zoning ordinance] are as follows:

a. Prior to issuance of the Certificate of Occupancy (CO), the applicant shall provide to the . . . Zoning Administrator evidence of permits and conditions to satisfy all applicable state and fed-

eral agencies. A general site plan is required in accordance with Section 10240 of the [zoning ordinance].

Information submitted with the general site plan shall be further supplemented with the following:

(1) A narrative describing the proposed wind energy facility, including ... the proposed number of turbines [and] representative types....

\* \* \* \*

3. Information Specifications

As part of the application, the applicant shall submit a Community and Environmental Impact Analysis conducted by parties mutually agreed upon by the Applicant and the County which shall contain the following information applicable to areas of land disturbance or as community-wide noted below. The Community and Environmental Impact Analysis may include a timeline for completion for the various items listed below with the understanding that completion must occur prior to issuance of the Certificate of Occupancy:

\* \* \* \*

h. Economic impact analysis, including impact upon agriculture, the housing market and the tourist industry.

Sections 3230C.1(2)(a)(1) and (3)(h) of the zoning ordinance.

In addition, Section 10240 of the zoning ordinance states, as pertinent:

**SECTION 10240 GENERAL SITE PLAN REQUIREMENTS**

The following information is required for those land uses which require site plan review....

**A. General Matters**

\* \* \* \*

6. Location, size, dimensions, height, and setbacks of all existing and proposed structures and other improvements on the property, including but not limited to, buildings, existing and proposed parking areas, streets, walkways, drainage structures, utility poles, fences, retaining walls, including on-site sewage systems or private water supply systems, etc.

\* \* \* \*

10. Location and intensity, in candlepower, of all exterior lighting, including height and spacing of all lighting standards.

\* \* \* \*

12. Within a legend or title block, the following information:

(a) Gross square footage of all building structures.

\* \* \* \*

(d) Open space per lot not occupied by buildings, structures, or paving.

\* \* \* \*

**B. Drainage Matters**

\* \* \* \*

6. Stormwater management and construction site erosion control plans.

\* \* \* \*

**E. Proposed Activities**

\* \* \* \*

2. Preliminary plan for sanitation and storm drainage facilities.

Section 10240(A)(6), (10), 12(a), (d), (B)(6), (E)(2).

## B. Analysis of Specific Deficiencies Alleged

In response to Objector's appeal of the issuance of the permit, the Zoning Administrator issued a reply in which he addressed each alleged deficiency. In its decision, the ZHB determined the application was sufficiently complete to satisfy the applicable zoning ordinance requirements. *See* F.F. No. 19. We now undertake review of each of the deficiencies alleged by Objector in this appeal.

### 1. Location of Transmission Line Poles, Private Roads and Other Buildings

■ As for Objector's claim that Laurel Hill failed to include the location of transmission line poles, private roads and other buildings, the Zoning Administrator determined Laurel Hill's site plans do, in fact, show the location of electric/utility lines and that, although the exact location of transmission poles is not shown, the locations would be shown on the "as built drawings" for land development. Reproduced Record (R.R.) at 96a. The Zoning Administrator further indicated the site plans show the location of roads. Based on our review of the more than 20 pages of detailed site plans submitted by Laurel Hill, no error is apparent in the ZHB's determination that the information supplied by Laurel Hill was adequate for zoning permit approval. More particularly, a review of Laurel Hill's site plans include, among other things, overall existing site plans, turbine plans, access roadway plans and substation plans. These plans show the location of existing and proposed roads and buildings, existing electric lines and poles and the proposed location of the turbines and transmission lines. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A. In addition, as the Zoning Administrator indicated in his response to this alleged deficiency, Laurel

Hill will be required to provide further clarify the precise location of the transmission poles at the land development stage. R.R. at 96a. Therefore, we reject Objector's claim on this point.

### 2. FAA Lighting

■ Objectors next claim the application is deficient because it failed to include information regarding the intensity of certain lighting required by the FAA in connection with the proposed wind energy facility. In his reply to Objector's allegation of deficiency on this point, the Zoning Administrator noted this issue was discussed in an e-mail between himself and counsel for Laurel Hill, and it was determined that information regarding FAA lighting would be addressed at the certificate of occupancy stage. R.R. at 96a. More particularly, in response to an e-mail from the Zoning Administrator that indicated Laurel Hill needed to supply him with information regarding the FAA lighting, counsel for Laurel Hill explained:

> [A]s we have discussed in the past, the FAA will not issue a Notice to Construct until we submit to them a final layout. As you know the layout of the project remains uncertain—its somewhere between 30 and 35 turbines. We have had discussion with FAA and we believe they will require lights on every third turbine.

C.R., Zoning Hearing, 7/23/08, Zoning Administrator Ex. # 7. In response, the Zoning Administrator stated:

> *The [zoning] [o]rdinance is not specific on timing of the FAA information.* It states that "Aircraft signal lighting is not permitted other than as required by the Federal Aviation Administration (FAA)." I believe your proposal to include this information at the C/O stage is probably appropriate. Right now, we

are only reviewing for completeness, so the definitive answer will come during the next review.

*Id.* (emphasis added). A review of the zoning ordinance confirms the Zoning Administrator's statement that the zoning ordinance is silent as to the timing of FAA information. *See* Section 3230C.1(4)(b) of the zoning ordinance; *see also* Section 5190(D) of the zoning ordinance (airport hazard areas). Because the zoning ordinance does not require an applicant to submit FAA lighting information when it applies for a zoning permit, and because the Zoning Administrator indicated such information will be submitted at the certificate of occupancy stage, this alleged deficiency does not warrant denial of Laurel Hill's zoning permit application.

### 3. Gross Square Footage of Buildings

■ As to Objector's claim that the permit application was deficient because it did not provide the gross square footage for buildings depicted on the site plan, the Zoning Administrator stated that "Sheet SUB 1" of Laurel Hill's site plans does, in fact, indicate the size of structures for the proposed wind energy facility. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A, Sheet No. SUB 1. Moreover, Objector does not further explain how Laurel Hill's site plans are deficient with regard to the gross square footage of buildings. In the absence of any further explanation regarding this deficiency, we discern no error in the ZHB's rejection of Objector's assertion on this point.

### 4. Open Space

■ With regard to Objector's argument that Laurel Hill's site plans are deficient because they fail to indicate the amount of open space per lot, the Zoning Administrator determined the cover sheet to Laurel Hill's site plans indicates impervious surface for the project would be 3.3%, and, as a result, open space would equate to 96.7%. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A, Sheet No. C 1. Objector offers no explanation as to how the Zoning Administrator's response on this point is in any way deficient. In the absence of such explanation, we discern no error in the ZHB's rejection of Objector's assertion on this point.

### 5. Stormwater Management and Construction and Site Erosion Plans

■ Objector also claims Laurel Hill's application is deficient because it does not include stormwater management and construction and site erosion plans. Contrary to this assertion, a review of Laurel Hill's site plans reveals an explanation of erosion and sediment controls as well as conceptual stormwater management plans. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A, Sheets Nos. ES1, ES2, PCSM1, PCSM2. Furthermore, Laurel Hill's plans indicate additional detail regarding stormwater management will be provided at the land development stage, and post-construction stormwater management plans will be provided to the Lycoming County Conservation District. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A, Sheets No. PCSM2. We discern no error in the Zoning Administrator's determination that this information was sufficient for purposes of zoning permit review.

### 6. Sanitation and Storm Drainage Facilities

■ As for Objector's claim that the application lacks plans for sanitation and storm drainage facilities, the Zoning Ad-

ministrator indicated this information was, in fact, included in "Sheet SUB 1" of Laurel Hill's site plan. Our review of Sheet SUB 1 confirms the Zoning Administrator's statement. Indeed, Sheet SUB 1 depicts, among other things, the existence of a proposed stormwater area as well as an area reserved for an on-lot septic system. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2, App. A, Sheet No. SUB 1. In the absence of an explanation by Objector as to how this information is insufficient to satisfy the relevant zoning ordinance requirement, we reject Objector's claim.

### 7. Turbine Information

 With regard to Objector's contention that the application is deficient because it does not include information relating to the type of turbines to be constructed, again a review of the application belies this assertion. To that end, the application indicates the proposed facility would consist of 35 individual wind turbines, and it lists the representative types according to manufacturer, megawatt capacity, meter rotor diameter, tower height and blade length and type. *See* C.R., ZHB Hearing, 7/23/08, Zoning Administrator Ex. # 2 at 1. Further, we disagree with Objector that this information is insufficient because Laurel Hill did not provide more information regarding the precise turbines to be constructed. Indeed, as explained by the trial court:

> [Objector argues] "[r]epresentative turbines are listed but [the application] contains a disclaimer, "but not limited to", therefore allowing any turbine, regardless of size, to be installed, including the giant 5 mw. or the newly conceived 10 mw. versions."—As the applicant lists as "representative" turbines with capacity ranging from 2.0 MW to 2.5 MW, a 10 MW, or even 5 MW, turbine would *not*

be representative and thus could not be constructed under the auspices of the instant permit. The Court wishes to point out that by requiring a listing of representative types of turbines, rather than of exactly those which will be installed, the [zoning ordinance] renders redundant the inclusion of the language "but not limited to" [ (in Laurel Hill's application) ], as the word "representative" implies that other, similar, types may be installed. Therefore, including the language "but not limited to" in the application does not violate the [zoning] ordinance, and the Zoning Administrator did not abuse his discretion in approving of such.

Tr. Ct., Slip Op., 12/24/08 at 3 (footnotes omitted). We agree with the trial court's rejection of Objector's claim on this point.

### 8. Economic Impact Analysis

 Finally, Objector claims the application is deficient because it does not contain a detailed economic impact analysis. Again, this claim fails. A review of Laurel Hill's application reveals an economic impact analysis that provides an analysis of the proposed project's impact on, among other things, agriculture, tourism and local property values as required by the zoning ordinance. Therefore, no deficiency exists. *See* C.R., ZHB Hearing, Zoning Administrator Ex. # 2 at 7–8, 11–16, App. E.

In summary, we agree with the trial court and the ZHB that the Zoning Administrator properly determined the information submitted by Laurel Hill with its permit application was sufficient to satisfy the relevant ordinance requirements. Therefore, we reject Objector's assertions that Laurel Hill's permit application was deficient.

### II. Conflict of Interest

 Objector next contends his due process rights were violated by an alleged

"conflict of interest" because the same law firm represented both Laurel Hill and the County Commissioners, who amended the zoning ordinance to allow wind energy facilities as a permitted use. Objector asserts after the ZHB denied Laurel Hill's request for a special exception to construct its proposed wind energy facility, the County Commissioners acted to amend the zoning ordinance so as to allow Laurel Hill to construct its wind energy facility as a permitted use. This claim fails.

In *Christman v. Zoning Hearing Board of Township of Windsor*, 854 A.2d 629 (Pa.Cmwlth.2004), this Court thoroughly explained the analytical framework used to evaluate a "bias challenge" such as that presented by Objector here. We stated:

> In *Schlesinger Appeal*, 404 Pa. 584, 172 A.2d 835 (1961), our Supreme Court eloquently described the importance of an impartial tribunal as follows:
>
> > A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.... This Court has said ... that 'every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.'
>
> *Schlesinger Appeal*, 404 Pa. [at] 597–598, 172 A.2d [at] 840–841 (quoting *In Re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)).
>
> As a general rule, a municipal officer should disqualify herself from any proceeding in which she has an immediate or direct personal or pecuniary interest. *Amerikohl Min. Inc. v. Zoning Hearing Bd. of Wharton Township*, 142 Pa. Cmwlth. 249, 597 A.2d 219 (1991). This Court recently reiterated the standards used to analyze a claim of bias:
>
> > The Court recognizes that due process requires a local governing body in the performance of its quasi-judicial functions to avoid even the appearance of bias or impropriety. A showing of actual bias is unnecessary in order to assert a cognizable due process claim; the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation of that right.
>
> *Kuszyk v. Zoning Hearing Bd. of Amity Township*, 834 A.2d 661, 665 (Pa. Cmwlth.2003).
>
> Importantly, "[w]hile an appearance of nonobjectivity is sufficient to trigger judicial scrutiny, the significant remedy of invalidation often depends on something more tangible." *Caln Nether Co., L.P. v. Bd. of Supervisors*, 840 A.2d 484, 496 (Pa.Cmwlth.2003). "Before it can be said that a judge [or ZHB member] should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment.... If a judge [or ZHB member] thinks he is capable of hearing a case fairly his decision not to withdraw will ordinarily be upheld on appeal." *Appeal of Miller & Son Paving, Inc.*, 161 Pa.Cmwlth. 138, 636 A.2d 274, 278 (1993) (quoting *In re Blystone*, 144 Pa.Cmwlth. 27, 600 A.2d 672, 674 (1991)).
>
> Generally, recusal is warranted where a member of the tribunal participates as an advocate or witness, publicly expresses predisposition, or has a fiduciary relationship with a party in interest. *E.g. Prin v. Council of the Municipality of Monroeville*, 165 Pa.Cmwlth. 519, 645

A.2d 450 (1994)(councilmember who publicly expressed predisposition against project through letters on council letterhead required to recuse); *Thornbury Township Bd. of Supervisors v. W.D.D., Inc.,* 119 Pa.Cmwlth. 74, 546 A.2d 744 (1987) [ (1988) ] (board member disqualified after taking advocacy role before the board as private citizen in opposition to subdivision plan); *McVay v. Zoning Hearing Bd. of New Bethlehem Borough,* 91 Pa.Cmwlth. 287, 496 A.2d 1328 (1985) (recusal required where a majority of board members, before appointment, signed and filed petitions in opposition to the zoning ordinance at issue); *Borough of Youngsville [v. Zoning Hearing Bd. of Borough of Youngsville],* 69 Pa.Cmwlth. 282, 450 A.2d 1086 (1982) (board member disqualified because he had been employed by the applicant and testified on the applicant's behalf).

However, a tangential relationship between a tribunal member and the litigation, without evidence of bias, prejudice, capricious disbelief or prejudgment, is insufficient to warrant recusal. *E.g. Caln Nether Co., L.P.,* 840 A.2d at 496 (supervisor owning property near proposed project was not required to recuse despite membership in civic organization granted party status opposing project); *Kuszyk,* 834 A.2d at 665 (marital relationship between board member and supervisor insufficient to require recusal absent allegation of bias or improper influence); *Amerikohl Min. Inc.* 597 A.2d at 223 (board members not disqualified where member and another member's in-laws resided close to proposed project); *Danwell Corp. v. Zoning Hearing Bd.,* [115 Pa.Cmwlth. 174] 540 A.2d 588 (1988) (recusal not necessary when board member was political opponent of objector and issue before the board was a campaign issue).

*Christman,* 854 A.2d at 633–34 (emphasis deleted).

In rejecting Objector's conflict of interest argument here, the trial court explained (with emphasis added):

The Court is not here to determine whether th[e] dual representation [of Laurel Hill and the County Commissioners by the same law firm] in general represents a conflict of interest under the Rules of Professional conduct.... *With respect to [Objector's] particular claim here, the Court notes that the [ZHB], not the County Commissioners, is the relevant entity, and the [ZHB], was and is represented by counsel not a member of [the firm representing Laurel Hill and the County Commissioners]. The Court finds, therefore, that no conflict such as could raise due process concerns, exists.*

Tr. Ct., Slip Op., 12/24/08 at 6. We discern no error in the trial court's analysis. In short, the ZHB, not the County Commissioners, was the entity charged with reviewing the Zoning Administrator's grant of the permit to Laurel Hill. Because the ZHB was represented by separate counsel, we agree with the trial court that no conflict that could support a due process challenge is apparent. Furthermore, at the ZHB hearing here, Objector neither alleged nor proved bias on the part of any member of the ZHB. Thus, Objector's conflict of interest claim fails.

### III. Fairness of ZHB Proceedings

█ Objector also claims the ZHB violated his due process rights when it denied him the right to present evidence, to cross-examine witnesses and to provide complete testimony. This claim lacks merit.

█ Fundamentally, due process affords a party notice and an opportunity to be heard. *Weaver v. Franklin County,* 918 A.2d 194 (Pa.Cmwlth.), *appeal denied,*

593 Pa. 751, 931 A.2d 660 (2007). Due process principles require an opportunity, among other things, to hear evidence adduced by an opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument. *See Panzone v. Fayette County Zoning Hearing Bd.*, 944 A.2d 817 (Pa.Cmwlth.2008). Further, pursuant to Section 908 of the MPC, 53 P.S. § 10908:

> The [zoning hearing] board shall conduct hearings and make decisions in accordance with the following requirements:
> (5) The parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues.

> \* \* \* \*

> (6) Formal rules of evidence shall not apply, but *irrelevant, immaterial, or unduly repetitious evidence may be excluded.*

53 P.S. § 10908(5), (6) (emphasis added).

In rejecting Objector's due process claim, the trial court stated:

> A review of the transcript of the [ZHB] hearing indicates ... that [Objector] began his presentation by simply reading the document he had previously submitted to the [ZHB], his list of the 28 allegations of deficiencies, and as he began number 7, [the ZHB's solicitor] asked "would it be fair to say that you want to read through the rest of the balance of the exhibit?" to which [Objector] responded, "If time allows, I would like to." [The ZHB's solicitor] then stated: "Yeah. And the thing is I don't want to really limit you to be quick. But I think the [ZHB] would probably be interested in those things which you think are clearest examples of error in the approval of the permit." He also explained: "I assume we can all read

through this ... [.]" and asked [Objector] to "highlight to the [ZHB] what you think are the key elements, that would be helpful if that's okay with you." [Objector] indicated "That's okay with me ..." and stated, "If I could go through this whole thing it might take a half hour. So I will cut it down. But I would—I am not asking that this be a requirement but I am just asking if you would allow five or ten minutes for the [ZHB] to actually sit and read through this?" [The ZHB's solicitor] responded "Absolutely." [Objector] then continued his presentation by highlighting those issues he felt most important, and concluded without further curtailment. As the [MPC] also provides that "unduly repetitious evidence may be excluded[,]" the Court believes this procedure was in keeping with due process requirements, and although [Objector] complains that the [ZHB] never read through his list as was promised, the Court notes the list was provided to the [ZHB] prior to the hearing, and also that the [ZHB] did deliberate for a period of time after the hearing, prior to rendering its decision. This claim is thus without merit.

> [Objector] also asserts that his due process rights were violated by the [ZHB's] solicitor's announcement at the beginning of the hearing that "cross examination of witnesses would be done exclusively by the [ZHB,]" which resulted in his inability to cross-examine witnesses. [Objector] does not identify any witnesses whom he wanted to cross-examine, however. Therefore, this claim is also without merit.

Tr. Ct., Slip Op., 12/24/08 at 5–6 (footnotes omitted). Based on our review of the transcript of the ZHB proceedings, we agree with the trial court's rejection of Objector's due process claim. Contrary to his assertions, the ZHB did not deprive Objector the right to present evidence and argument or cross-examine any adverse

witnesses.[3] Rather, the ZHB provided Objector with notice of the hearing and an opportunity to present evidence and argument at the hearing; as such, Objector was afforded all process due. Therefore, Objector's claim fails.

 Based on the foregoing, we affirm.[4]

### ORDER

**AND NOW,** this 4th day of December, 2009, the order of the Court of Common Pleas of Lycoming County is **AFFIRMED.**

**3.** Moreover, although Objector now asserts he wished to cross-examine the solicitor for the Zoning Administrator, he does not explain what information he would seek to elicit from this witness or how that information would have assisted him in prosecuting his appeal of the issuance of the permit.

**4.** In a footnote in his brief, Objector also contends Laurel Hill lacked standing to apply for the zoning permit because it did not have a beneficial interest in the land and was not a developer. Notably, the ZHB did not address this issue. Upon review, we do not believe Objector adequately preserved this issue for review.

More particularly, at the ZHB hearing, after Objector concluded his presentation regarding the numerous alleged deficiencies in the permit application, Objector's wife briefly stated, "I have been researching certain aspects of the project as to whether they have legal standing to even submit an application. My research is inconclusive." Reproduced Record (R.R.) at 164a–65a. Objector did not mention the issue of standing in his written submission to the ZHB outlining the 28 alleged deficiencies in the application. R.R. at 93a–95a. Under these circumstances, it is not surprising the ZHB did not address the issue of standing. Given that Objector did not clearly place the ZHB on notice of its challenge to Laurel Hill's standing to apply for the permit and the fact the ZHB did not address this issue, we conclude the issue is waived. *See* G. Ronald Darlington et al., 20 *Pennsylvania Appellate Practice* § 302:1 (2008–09 ed.) ("[w]here a point is mentioned but not developed in a manner that invites the thoughtful attention of the lower tribunal, it is not 'raised' for purposes of later appeal.") (citing *Pettit v. Namie*, 931 A.2d 790 (Pa. Cmwlth.2007)).

Moreover, we do not believe Objector's brief mention of the standing issue solely in a footnote in its brief to this Court is sufficient to preserve the issue for our review. *See Wicker v. Civil Serv. Comm'n*, 74 Pa.Cmwlth. 548, 460 A.2d 407 (1983) (when issues are not properly raised and developed in briefs and the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits).