# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

April A. Goode,                 :
            Appellant       :
                              :
            v.                :    No. 1517 C.D. 2018
Housing Authority of the City of    :    Submitted: September 9, 2019
Shamokin                        :
                              :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY SENIOR JUDGE SIMPSON**           **FILED: October 9, 2019**

## I. Introduction

This case returns to us after our decision in Goode v. Housing Authority of the City of Shamokin (Pa. Cmwlth., No. 1623 C.D. 2016, filed June 13, 2017), 2017 WL 2544304 (unreported) (hereinafter, Goode I), wherein we vacated and remanded for further proceedings primarily focusing on whether April A. Goode (Goode), a recipient of housing assistance under the Housing Choice Voucher Program (Program), commonly referred to as "Section 8,"[1] received fair notice of an administrative hearing, which she failed to attend. Following that hearing, the Housing Authority of the City of Shamokin (Authority) terminated Goode's housing assistance pursuant to regulations established by the U.S. Department of Housing and Urban Development (HUD). On remand, the Authority ultimately conducted an

---

[1] See Section 8(a) of the Housing and Community Development Act of 1974, 42 U.S.C. §1437f(a). The Program is funded by the federal government, but it is administered by local public housing authorities. 42 U.S.C. §1437f(o).

evidentiary hearing at which Goode participated. Following that hearing, the Authority upheld the prior termination of Goode's housing assistance. On appeal, the Court of Common Pleas of Northumberland County[2] (trial court) upheld the Authority's termination of Goode's assistance. For the reasons that follow, we affirm.

## II. Background

On October 1, 2015, the Authority initially approved Goode's participation in the Program. The Authority paid a portion of Goode's rent directly to her landlord, Peter Ruch (Landlord). Goode also received utility reimbursements. However, Goode did not move into the rental unit until about a week later, allegedly because Landlord needed to repair a broken thermostat and a water leak. As a result of these problems, Goode claims she did not switch the water or electric into her name until October 8, 2015.

After Landlord emailed the Authority that Goode failed to pay her share of the October rent or place the utilities in her name, the Authority mailed Goode a letter threatening to terminate her housing assistance. The Authority gave Goode 10 days from the date of the letter to prove payment of rent. Also, because Goode received a utility allowance, she was asked to produce documents from her utility companies showing that she transferred them into her name.

Upon receiving the letter, Goode immediately called the Authority to explain that the problem had been resolved. However, Goode could not produce all

---

[2] The Honorable Hugh A. Jones presided.

2

of the required documents in the 10-day period, which expired October 19, 2015. At the expiration of the 10-day period (20 days after the letter), the Authority notified Goode by letter that it intended to terminate her housing assistance, effective November 30, 2015. The Authority advised Goode that she could request an informal grievance hearing. Goode requested a grievance hearing regarding the termination of her assistance.

The Authority sent Goode notice of a grievance hearing scheduled for November 17, 2015. Following the hearing, the Authority issued a determination finding Goode in violation of the Program. However, the Authority permitted Goode to remain in the Program contingent upon her supplying the Authority with proof of her water and electric utility payments by the 30th day of each month for three consecutive months.

The Authority also requested that Goode provide documentation that her daughter was enrolled in the local school district and that her current driver's license and vehicle registration show her (subsidized) residential address.

However, as of January 6, 2016, Goode failed to provide any documentation regarding her utility payments for the months of November and December 2015. In response, the Authority notified Goode that it intended to terminate her assistance effective January 31, 2016. The Authority's notice advised Goode she could request an informal grievance hearing regarding the proposed action.

In response, Goode sent the Authority a letter and attached documentation. Goode indicated in her letter that if the Authority still wanted to terminate her from the Program after receiving the documentation, she would like a second informal hearing. Because Goode's attachments did not change the fact that she failed to timely provide the requested documentation, the Authority provided Goode with notice of a hearing scheduled for January 20, 2016. However, Goode failed to appear at the January 2016 hearing. Thereafter, the Authority terminated Goode from the Program.

Goode appealed the Authority's decision to the trial court. The trial court held a hearing at which Goode, the Authority's executive director, Ronald Miller (Executive Director) and the Authority's rental manager for the Program, Kathleen Shevitski (Rental Director) testified. Shortly thereafter, the trial court issued an order denying Goode's appeal. In upholding the Authority's termination of Goode's housing assistance, the trial court noted that the certified record indicated the Authority's actions were fully compliant with its administrative plan developed pursuant to HUD regulations.

Goode appealed to this Court. In Goode I, we determined that the trial court did not resolve a factual dispute as to whether Goode was properly notified of the second hearing. We noted that the Authority based the termination of housing assistance on Goode's failure to appear at the second hearing. Therefore, we remanded the case to the trial court for a determination as to whether Goode received notice of the January 2016 hearing.

4

Ultimately, the trial court remanded the matter to the Authority with instructions to schedule a new grievance hearing for Goode and to provide her with adequate notice of the hearing. The Authority served Goode with a hearing notice and held the remand hearing on August 23, 2017. Malcom C. Farrow, IV (Hearing Officer), presided. Hearing Officer took testimony and received evidence.

Hearing Officer issued a decision upholding the Authority's termination of Goode's housing assistance. Hearing Officer determined the Authority acted reasonably based upon Goode's repeated failure to provide the requested documentation. Hearing Officer noted that in the short time Goode participated in the Program, she showed little appreciation for the Program's requirements. Goode twice disregarded the Authority's requests for documentation until she received notice that the Authority intended to terminate her housing assistance. Hearing Officer found that the Authority established just cause for terminating Goode's assistance.

Goode then filed a local agency appeal to the trial court based upon the record. In October 2018, the trial court issued an opinion and order affirming the Authority's decision. Original Record (O.R.), Item No. 11. In its opinion, the trial court addressed the four issues presented by Goode as follows.

First, Goode argued that the Authority cannot terminate her housing assistance based on her failure to timely pay her utility bills. The trial court found that the Authority did not terminate assistance based on untimely utility payments. Rather, the Authority terminated assistance based on Goode's repeated refusal to

5

provide timely documentation. The trial court noted that Goode obviously did not appreciate the fact the Authority is also responsible for keeping records. Essentially, the trial court reasoned that Goode continued to disregard the Program's rules and regulations.

Second, Goode argued that the Authority's request for documents was not reasonable or relevant to the administration of the Program. In rejecting this argument, the trial court observed that both the Authority and Program participants are required to provide the necessary documentation to remain in the Program. The trial court recognized that this requires proof of payment of utilities and residency. Citing 24 C.F.R. §982.552(c)(1)(i), the trial court noted that a public housing agency (PHA) may terminate assistance if the family violates any family obligations under the program.

Pursuant to 24 C.F.R. §982.551(b), a Program participant must supply any information that a PHA determines is necessary in the administration of the Program. Here, the trial court determined that Goode repeatedly failed to provide the required information to the Authority.

Third, Goode argued that the Authority failed to consider the non-serious nature of the violation and the adverse effect of termination of a recipient's housing assistance. The trial court found this issue to be the most difficult. Nevertheless, the trial court noted that Goode repeatedly disregarded the Program's reporting requirements until threatened with termination.

6

Fourth, Goode alleged Hearing Officer was not impartial. The trial court rejected this argument noting that there was no evidence supporting Goode's allegations of bias.

Having rejected Goode's arguments, the trial court affirmed the Authority's termination of Goode's participation in the Program. Goode's appeal to this Court followed.[3]

### III. Issues

Goode presents the following issues for our review. First, Goode contends the Authority erred in terminating her participation in the Program based on her failure to timely pay her utility bills. Goode further asserts the Authority's request for documents was neither reasonable nor relevant to the administration of the Program. Goode also argues the Authority erred in terminating her assistance under HUD regulations where she did not engage in serious wrongdoing. In addition, Goode claims she was denied a full and fair hearing before an impartial hearing officer.

### IV. Discussion
### A. Argument

Goode first contends the Authority erred in terminating her participation in the Program based on her failure to timely pay her utility bills.

---

[3] Our review is limited to determining whether the hearing officer's findings of fact are supported by substantial evidence, or whether the hearing officer erred or violated a party's constitutional rights. Degelman v. Hous. Auth. of City of Pittsburgh, 67 A.3d 1287 (Pa. Cmwlth. 2013) (citing Zajac v. Altoona Hous. Auth., 626 A.2d 1271 (Pa. Cmwlth. 1993)).

7

Goode asserts there is no requirement in the applicable HUD regulations that requires that participants pay their utility bills on time. Further, Goode asserts that when the Authority requested that she provide proof of payment of her utilities, the Authority already knew she had utility service at her apartment in her name. Nonetheless, the Authority asked Goode to prove she paid her utility bills each month and decided to terminate her Program assistance because she failed to prove it within the time limit given.

Goode also argues that such documents were not necessary for the Authority to administer the Program. Rather, Goode asserts, documentation is only required for information related to the calculation of income, family composition, signatures on consent forms, eligible immigration status and verification of social security numbers. Goode maintains that payment of utility bills does not fall into any of these categories.

Goode points out that government benefits such as housing assistance under the Program are property interests protected from arbitrary termination by the Fourteenth Amendment.[4] Mathews v. Eldridge, 424 U.S. 319 (1976); Goldberg v. Kelly, 397 U.S. 254 (1970). Citing several cases from other jurisdictions, Goode also argues her constitutional right to substantive due process protects her from termination of her housing assistance for arbitrary or capricious reasons. See Cooley v. Hous. Auth. of City of Slidell, 747 F.3d 295 (5th Cir. 2014) (housing authority's termination of housing assistance based on participant's failure to comply with annual reporting requirements was arbitrary and capricious, and violated

---

[4] U.S. CONST. amend. XIV.

8

participant's due process rights under the circumstances where the authority failed to consider recipient's prompt action after receiving a rescheduling letter); Love v. Auburn Hous. Auth. (M.D., Ala., No. 3:17cv810-WKW-WC, filed Jan. 16, 2018) 2018 WL 850157 (unreported in F.Supp.) (recipient's technical violation of her family obligations consisting of a failure to respond to notices requesting information did not warrant the drastic remedy of terminating her housing assistance); Johnson v. Fort Walton Beach Hous. Auth. (N.D. Fla., No. 3:11cv506-MCR/EMT, filed Jan. 5, 2012), 2012 WL 10688344 (unreported in F. Supp. 2d) (holding that a Program participant demonstrated a substantial likelihood of success on her claim that a housing authority arbitrarily terminated her assistance after she missed two meetings and failed to provide required documentation due to circumstances beyond her control); Carter v. Olmsted Cty. Hous. & Redev. Auth., 574 N.W.2d 725 (Minn. Ct. App. 1998) (holding that a Program participant's failure to provide tax returns, without some proof that she could obtain them, could not be used as a basis to terminate her assistance); McClarty v. Greene Metro., 963 N.E.2d 182 (Ohio Ct. App. 2011) (holding that a housing authority's termination of housing assistance to a Program participant who unintentionally failed to report child support income was arbitrary and capricious absent a finding of an intent to deceive or a pattern of conduct demonstrating serious disregard for her participant obligations); Gist v. Mulligan, 65 A.D. 3d 1231, 886 N.Y.S.2d 172 (N.Y. Sup. Ct. App. 2009) (holding that a housing authority's decision to terminate housing assistance for a Program participant's failure to complete a recertification form and give notice that she vacated her apartment due to incarceration was so disproportionate to the offenses committed as to shock one's sense of fairness).

Here, Goode asserts the Authority: (1) requested documents on October 9, 2015 showing Goode paid her October 2015 rent and registered the electric and water utilities in her name (Ex. A-2); (2) notified Goode on October 29, 2015 that her housing assistance would be terminated in one month for failure to provide the required documents and for claiming an individual on the lease who did not reside there; and (3) by letter dated November 24, 2015, notified Goode that she will need to provide proof of her daughter's enrollment in the local school district; proof by the 30th of each month that she paid her electric and water utility bills; and proof that she changed her driver's license and vehicle registration to her current address as required by state law.

All of these requests for documents occurred within two months of the Authority's approval of housing assistance. Goode claims the Authority's only arguably valid concerns related to an October 9, 2015 email from Landlord regarding the rent and utilities. Goode asserts she resolved these issues by paying her share of the rent on October 14, 2015. Goode further asserts the Authority could have resolved these issues with a simple call or email to Landlord.

Goode maintains the real and unspoken reason for the Authority's requests for documentation was the Authority's suspicion that she was not living at the apartment she rented. Goode argues there is nothing in the record to support the Authority's suspicion. Rather, the Authority's request for documentation shows a bias on the part of the Authority and Hearing Officer based on their experience with other tenants.

Goode further argues that one consistent statutory and regulatory protection found in all programs administered by HUD is the requirement that termination from a program result only from serious wrongdoing. In particular, Goode asserts HUD regulations set forth the following factors that a housing authority may consider when making a decision to terminate Program assistance:

> all relevant circumstances such as <u>the seriousness of the case</u>, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and <u>the effects of denial or termination of assistance on other family members who were not involved in the action or failure</u>.

24 C.F.R. §982.552(c)(2)(i) (emphasis added).

Applying this regulation here, Goode asserts the Authority does not deny that she provided all the documents it requested. Thus, the Authority's only complaint is the timing of the document submissions. According to Goode, the totality of the circumstances here, including the nature and amount of the documents requested, the short time given to provide them, and the short delay between the Authority's deadlines and the dates of her submissions, support her assertion that the Authority erred in finding violations so serious as to warrant termination of assistance.

In her final argument, Goode contends Hearing Officer, a member of the Authority's Board of Directors at the time, only questioned Goode as to whether she lived at the apartment at the time, which was not an issue at the hearing or a basis for her termination. Citing the transcript of the August 2017 remand hearing, Goode further asserts Hearing Officer: tried to stop Goode's counsel from making a closing

11

argument; repeatedly referred to Goode's counsel's statements as "your opinion;" accused Goode's counsel of trying to ossify and confuse; and did not take Goode's exhibit or the case law she provided.

Goode further argues Hearing Officer did not interrupt the Authority's closing argument and accepted the Authority's exhibits. Goode maintains she was denied a full and fair hearing before an impartial hearing officer.

In response, the Authority asserts Hearing Officer was qualified under 24 C.F.R. §982.555(e)(4)(i), which provides:

> (4) Hearing officer: Appointment and authority.
>
> (i) The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person.

The Authority argues that Goode makes only vague, uncorroborated allegations that Hearing Officer was not friendly enough to her counsel and that he failed to pick up documents submitted as evidence as quickly as her counsel desired. Summarizing, the Authority asserts Hearing Officer conducted an extensive hearing at which the parties presented considerable documentary evidence. The Authority maintains all documents presented by both parties were admitted into evidence and that each party was permitted to present all their witnesses and cross-examine the other party's witnesses. The Authority further argues the written decision does not reflect any apparent bias.

12

## B. Analysis

## 1. Hearing Officer's Determination

Pursuant to 24 C.F.R. §982.551 (relating to obligations of a participant), Goode is subject to the following obligations:

(b) Supplying required information—

(1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the [P]rogram, including submission of required evidence of citizenship or eligible immigration status …. 'Information' includes any requested certification, release or other documentation.

\* \* \* \*

(4) Any information supplied by the family must be true and complete.

\* \* \* \*

(e) Violation of lease. The family may not commit any serious or repeated violation of the lease.

24 C.F.R. §982.551(b)(1), (b)(4), (e) (emphasis added).

In his 2017 decision on remand, Hearing Officer noted that the Authority approved Goode's apartment, with her lease to begin on October 1, 2015. Hr'g Officer (H.O.) Op., 9/4/17, at 1. On October 9, 2015, Landlord emailed Rental Director and complained that Goode failed to pay her security deposit and her first month's rent. Goode also failed to put the water bill in her name. See Grievance Hr'g, 8/23/17, Ex. A-1.

13

On October 9, 2015, the Authority mailed Goode a warning letter based on Landlord's email. See Ex. A-2. The Authority requested that Goode provide documentation within 10 days showing that she paid her rent and placed the utilities in her name. Id. Goode, however, did not respond to the Authority. By letter dated October 29, 2015, the Authority notified Goode that as a result of her failure to provide the requested documents within the timeframe given, her assistance would be terminated effective November 30, 2015. See Ex. A-3. The Authority also alleged an individual listed on the lease did not reside in the unit. Id. Eventually, the Authority noted, Goode provided documentation that her daughter resided in the household and was enrolled in "cyber-school" with the Shamokin Area School District. H.O. Op. at 2; Ex. A-12.

Goode responded to the notice of termination with a letter requesting a grievance hearing regarding the termination. See Ex. A-4. By letter dated November 9, 2015, the Authority granted Goode's request and scheduled a grievance hearing for November 17, 2015. See Ex. A-5. At the November 2015 hearing, Goode testified and presented documentation. Goode's documentation established that she placed the electric and water utilities in her name on October 8, 2015. H.O. Op. at 7; Exs. A-8 to A-11.

Nonetheless, Hearing Officer determined the Authority had the legal right to terminate Goode from the Program based on her failure to pay the rent and place the utilities in her name by October 1, 2015, and on her failure to respond to the Authority's request for documentation. H.O. Op. at 4. Hearing Officer, citing

14

Landlord's email, rejected Goode's explanation that Landlord agreed to let her withhold the rent because of alleged deficiencies in the unit. Id.

However, the Authority's grievance determination, dated November 24, 2015, permitted Goode to remain in the Program subject to the following conditions:

> [Y]ou, the participant will need to provide proof of enrollment in local school district, paid utility bills (PP&L and Aqua) by the 30th of each month (November 2015, December 2015 and January 2016), and provide photo ID (PA driver[']s license) and vehicle registration with current address as required by Commonwealth law by December 31, 2015.

Ex. A-7 (Grievance Requirements). Hearing Officer agreed that under the circumstances, the Authority took the correct action. H.O. Op. at 5.

Next, Hearing Officer determined the Grievance Requirements were reasonable, noting that the Authority may place these requirements on Goode pursuant to 24 C.F.R. §982.551(b)(1). H.O. Op. at 5. Hearing Officer also rejected Goode's argument that the Grievance Requirements were confusing and unclear. Id. at 6.

After failing to receive the required utility payment documentation for either November or December 2015, the Authority notified Goode that she would be terminated from the Program effective January 31, 2016. H.O. Op. at 6-7. In response to this notice, Goode provided the requested documentation. Id. at 7.

15

Hearing Officer noted that the Authority made no contention that Goode's documentation was inadequate.  Id.

Nonetheless, Hearing Officer recognized that the issue before him was whether it was reasonable for the Authority to terminate Goode's participation in the Program based on her repeated failure to provide documentation as required by 24 C.F.R. §982.551(b)(1).   In particular, Hearing Officer cited 24 C.F.R. §982.552(c)(1), which provides that a PHA may terminate Program assistance if the participant family violates any of the obligations in 24 C.F.R. §982.551.  In reaching his determination, the Hearing Officer reasoned as follows:

> As of January 2016, [Goode] was only a [Program] participant with the Authority for a little over three months.  By this time, [Goode] had already received her second notice of termination from the [Program].  [Goode], in the short time she was [a Program] participant with the Authority, has shown little appreciation for the requirements of the [Program].  [Goode] has shown a tendency to ignore the Authority and only provide documentation when [she] has received notice that she is to be terminated from the [Program].   Under the circumstances, I find that the Authority is legally authorized and has shown due cause to terminate [Goode] from the [Program].

 H.O. Op. at 7.

## 2.  Merits of Appeal
### a. Failure to Pay Utility Bills

As discussed above, Hearing Officer determined the Authority terminated Goode from the Program based on her failure to comply with the

16

Grievance Requirements established by the November 2015 grievance determination permitting Goode to remain in the Program. The Grievance Requirements mandated that Goode provide proof that she paid her electric and water utility bills by the 30th of each month for November and December 2015, and January 2016. Despite this condition, Goode failed to provide this documentation until threatened again with termination.

Pursuant to 24 C.F.R. §982.552(c)(1), the Authority may terminate Program assistance for a participant family if it violates any of the obligations in 24 C.F.R. §982.551. A participant family must supply any information that a PHA determines is necessary in the administration of the Program. 24 C.F.R. §982.551(b)(1). Any information supplied by the family must be true and *complete*. 24 C.F.R. §982.551(d). A PHA may terminate housing assistance based on a participant's knowing and willful failure to comply with any family obligations. This includes the failure to provide documentation the PHA determined to be necessary. See Zajac v. Altoona Hous. Auth., 626 A.2d 1271 (Pa. Cmwlth. 1993). As Hearing Officer observed, Goode demonstrated a tendency to disregard the Authority's requests for documentation until she received notice that her Program assistance would be terminated. Therefore, we reject Goode's contention that the Authority erred by terminating her participation in the Program based solely on her failure to pay her utility bills.

### b. Reasonable Request for Documents

Next, Goode asserts the Authority's request for utility payment documentation was neither reasonable nor relevant to the Authority's administration

17

of the Program. At the August 2017 grievance hearing, Goode acknowledged that she agreed to comply with the Grievance Requirements, including the required monthly documentation regarding payment of her utility bills for November 2015, December 2015, and January 2016, as a condition of her continued participation in the Program. See Notes of Testimony (N.T.), 8/23/17, at 90; Suppl. Reproduced Record (S.R.R.) at 10b.

Here, Landlord notified the Authority, in early October 2015, that Goode failed to pay her rent on time and to place the utilities in her name. See Ex. A-1. The Authority notified Goode that she had 10 days to provide the Authority with a paid rent receipt for October 2015, and a document showing the date the electric and water utilities were placed in her name. Ex. A-2. By letter dated October 29, 2015, the Authority advised Goode as follows:

> [Y]ou have not complied with the requirements of the [Program]. Specifically, failure to provide required documents in timeframe given in letter dated October 9, 2015, and claiming individual on lease/voucher that is not residing in the unit, therefore being over subsidized.
>
> As a result of your failure to comply with the above stated requirement your assistance will be terminated effective November 20, 2015. If you wish to appeal this decision, you have the right to an informal hearing. …

Ex. A-3 (emphasis added).

Further, as of the first grievance hearing on November 15, 2015, Goode had not yet changed the address on her driver's license or vehicle registration to her current residential address. However, rather than terminating Goode from the

18

Program, the Authority conditioned her continued participation on the requirement that she provide proof that she paid her utility bills for November and December 2015, and January 2016. At the hearing, the Authority indicated that this meant Goode needed to bring in her electric and water bills by the end of the month during those three months. See N.T. at 32; S.R.R. at 8b. The Authority further indicated that it discussed this requirement with Goode at the hearing, and she agreed to do it. Id. In exchange, the Authority agreed to Goode's continued participation in the Program. N.T. at 32-33; S.R.R. at 8b-9b.

However, as of January 6, 2016, Goode failed to provide the required documentation regarding her utilities. On that date, the Authority mailed a letter advising Goode that she would be terminated from the Program effective January 31, 2016. See Ex. A-13. In particular, the Authority advised Goode that she violated her "family obligations" with the Authority's "Administrative Plan for the [Program]." Id.

In explaining its decision to terminate Goode from the Program, the Authority asserts that as administrator of the Program, it has a duty to ensure that rent payments to landlords and utilities are properly applied. Appellee's Br. at 15. Here, Landlord notified the Authority that Goode failed to pay her portion of the rent and did not place the utilities in her name. Thereafter, Goode failed to provide proof of payment within the 10-day period specified by the Authority.

Moreover, although given an opportunity to remain in the Program if she provided monthly utility payment documentation for three months, Goode failed

19

to provide the required documentation during the first two months. In light of the circumstances in this case, including Goode's receipt of a utility allowance, we conclude that the Authority's request that Goode provide timely proof of payment of her utilities for three months was reasonable and relevant to the Authority's administration of the Program. 24 C.F.R. §982.551(b)(1); see Ex. A-2.

Goode, however, cites several cases from other jurisdictions for the proposition that technical violations of family obligations to provide requested information do not warrant the drastic measure of termination of benefits. We find these cases to be distinguishable because they each involved circumstances where the Program participant was prevented by circumstances *beyond his or her control* from meeting the requested requirements or whose failure to meet the requirements was unintentional or otherwise reasonably justified.

In the present case, Hearing Officer determined that Goode's pattern of conduct demonstrated a repeated disregard of the Authority's reasonable and relevant requests for documentation. H.O. Op. at 7. Unlike the benefit recipients in the cases Goode cites, Goode offers no explanation justifying her failure to timely provide the requested documentation prior to being threatened with termination. Additionally, given a second chance at the November 2015 grievance hearing, Goode thereafter failed to timely provide the monthly documentation regarding utility payments.

In sum, pursuant to 24 C.F.R. §982.552(c)(1), the Authority may terminate Program assistance for a participant family if it violates any of the

20

obligations in 24 C.F.R. §982.551. A participant family must supply any information that a PHA determines is necessary in the administration of the Program. 24 C.F.R. §982.551(b)(1). Given the circumstances here, the documentation requested by the Authority in the Grievance Requirements, as a condition of Goode's continued participation in the Program, was reasonable and relevant to the Authority's role in administering the Program. Yet, Goode failed to timely supply the requested documents.

### c. Serious Wrongdoing

Goode further contends she ultimately provided all the documentation the Authority requested. Thus, Goode asserts, the Authority's only valid complaint was the timing of her submissions. Considering the number of documents requested, the short amount of time the Authority gave Goode to submit them, and the short delay before she submitted them, Goode maintains it is difficult to understand how the Authority could deem her violation so serious as to warrant termination of assistance.

Pursuant to 24 C.F.R. §982.552(c)(1)(i), the Authority may terminate Program assistance for a participant family if it violates any of the obligations in 24 C.F.R. §982.551. At the August 2017 remand hearing, the Authority's Executive Director testified that Goode's violations were an "automatic termination." N.T. at 90; S.R.R. at 10b (emphasis added). To that end, Executive Director explained:

> [Can] I speak freely? Technically speaking for the violations that were given, it was an automatic termination. However, what we had is we had two children involved, and I didn't want to see those children without housing. And the children, the one was young.

> What we had was a case there where if she would come back and comply with the [P]rogram, that she would have to provide on a monthly basis the requirements of the [P]rogram so we could be – especially for myself – assured that number one, the housing needs were being taken care of; and number two, <u>she was in compliance with the [P]rogram</u>.

<u>Id.</u> (emphasis added).

As indicated by Executive Director's testimony, the Authority considered the relative gravity of Goode's failure to promptly provide the requested documentation when it decided not to automatically terminate her Program assistance at the November 2015 grievance hearing. Rather, the Authority afforded Goode another opportunity to provide documentation that she properly used her utility allowance by paying her bills as a condition of her continued participation in the Program.

As emphasized above, 24 C.F.R. §982.552(c)(1)(i) specifically permits the Authority to terminate Program assistance for a participant family if it violates any of the participant's obligations in 24 C.F.R. §982.551. Pursuant to 24 C.F.R. §982.551(b)(1), a family must supply any information that a local housing authority determines is necessary to the administration of the Program. "Information includes any requested certification, release or other documentation." <u>Id.</u>

Nonetheless, pursuant to 24 C.F.R. §982.552(c)(2)(i), the Authority may consider the effects of the termination of assistance on other family members not responsible for the violation. Here, Executive Director indicated that he included such considerations. <u>See</u> N.T. at 90-91; S.R.R. at 10(b)-11(b).

22

For the above reasons, we discern no error or constitutional violation in Hearing Officer's determination that under the circumstances in this case, the Authority properly terminated Goode's participation in the Program. 24 C.F.R. §982.552(c)(1)(i); 24 C.F.R. §982.551(b)(1).

### d. Fair Hearing; Impartial Hearing Officer

Our review of Hearing Officer's decision does not reflect any apparent bias or prejudice. Although Hearing Officer served on the Authority's Board of Directors, this did not disqualify him from presiding as a hearing officer under 24 C.F.R. §982.555(e)(4). A hearing may be conducted by any person or persons designated by the local housing authority, *other than a person who made or approved the decision under review or a subordinate of this person*. Id. A tangential relationship between a tribunal member and the litigation, without evidence of bias, prejudice, capricious disbelief or prejudgment, is insufficient to warrant recusal. Piccolella v. Lycoming Cty. Zoning Hearing Bd., 984 A.2d 1046 (Pa. Cmwlth. 2009).

Furthermore, remarks made by a decision-maker during the course of a proceeding, that are critical or disapproving of, or even hostile to counsel, do not ordinarily support a claim of bias or impartiality. Penn St. L.P., v. E. Lampeter Twp. Zoning Hearing Bd., 84 A.3d 1114 (Pa. Cmwlth. 2014). Such is the case here. Goode's allegations on appeal are insufficient to demonstrate any deep-seated favoritism or antagonism that would render a fair decision by Hearing Officer impossible. Id. Similarly, the transcript of the hearing before the Hearing Officer

reveals nothing more than the Hearing Officer's skeptic response to argument that the written November 2015 Grievance Requirements were ambiguous.

Therefore, we reject Goode's contention that Hearing Officer's position on the Authority's Board of Directors and his conduct toward her counsel during the hearing violated Goode's right to a fair hearing before an impartial hearing officer. <u>Penn Street</u>; <u>Piccolella</u>.

## V. Conclusion

Apparently, Goode has not received benefits since January 31, 2016. Goode asks for benefits from the date of termination to the present. In light of the foregoing, however, we discern no error or abuse of discretion in the Authority's termination of Goode's participation in the Program. We also reject Goode's contention that she did not receive a full and fair hearing before an impartial hearing officer. Accordingly, we affirm the trial court's order upholding the Authority's termination of Goode's housing assistance under the Program.

_____
ROBERT SIMPSON, Senior Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

April A. Goode,                          :
                     Appellant           :
                                         :
              v.                         :    No.    1517 C.D. 2018
Housing Authority of the City of         :
Shamokin                                 :

# **O R D E R**

**AND NOW**, this 9th day of October 2019, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Northumberland County is AFFIRMED.

_____
ROBERT SIMPSON, Senior Judge