626 A.2d 1271

**Monica ZAJAC, Appellant,**

v.

**ALTOONA HOUSING AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued April 1, 1993.

Decided June 3, 1993.

Gloria V. Brown, for appellant.

Cynthia Yeager, for appellee.

Before DOYLE and PALLADINO, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Monica Zajac (Claimant) appeals the August 17, 1992 order of the Court of Common Pleas of Blair County (trial court), which affirmed the July 16, 1992 decision of the Altoona Housing Authority (Housing Authority), terminating Claimant's federally funded Section Eight[1] housing assistance for fraudulent nondisclosure of household composition and income and recommending recovery of the rental subsidies paid on Claimant's behalf. We affirm the order of the trial court terminating Claimant's benefits. We do not decide whether the Housing Authority is entitled to recover the rental subsidies paid on Claimant's behalf, as recommended in the Housing Authority's decision.

1. Section 8 of the United States Housing Act of 1937, *as amended,* 42 U.S.C. § 1437f.

The principal questions on appeal are (1) whether the Housing Authority's decision is erroneously based upon or tainted by hearsay evidence and (2) whether the housing regulation in question unconstitutionally restricts Claimant's rights of free association and privacy and denies her due process of law.

Where, as here, a full and complete record of the proceedings before the Housing Authority was made, we must affirm the decision of the Housing Authority unless we find that the adjudication is in violation of constitutional rights, or is not in accordance with the law, or that any finding of fact made by the Housing Authority is not supported by substantial evidence.[2]

The parties agree that Claimant resides with her two daughters in an apartment at 407 Kettle Street, Altoona, Pennsylvania, for which Claimant began receiving Section Eight housing assistance on January 1, 1990. Claimant is engaged to be married to Alfonso Futrell, the father of one of Claimant's daughters. In order to receive assistance, Claimant signed a Housing Authority statement that no adult person other than those listed on the lease and application shall live/stay in the apartment for more than thirty days. Mr. Futrell was not included on Claimant's original lease and application.[3] Mr. Futrell has been employed by the New Enterprise Stone and Lime Company since June, 1986. The Housing Authority initiated proceedings to terminate Claimant's Section Eight assistance upon receipt of a complaint that Mr. Futrell had resided with Claimant at 407 Kettle Street for two years. Following an investigation, the Housing Authority terminated Claimant's benefits effective August 15, 1992.

**2.** Section 754 of the Administrative Agency Law, 2 Pa.C.S. § 754; *Dallap v. Sharon City School District*, 105 Pa.Commonwealth Ct. 346, 524 A.2d 546 (1987), *rev'd on other grounds*, 524 Pa. 260, 571 A.2d 368 (1990).

**3.** Claimant included Mr. Futrell on a January 31, 1992 application after receiving notice that her subsidy would be terminated if she failed to do so.

Upon Claimant's request, the Housing Authority held an informal hearing on July 6, 1992.[4] Based on considerable documentary evidence including agency reports; the transcript of a prior hearing; affidavits; and employment records; as well as the testimony of Claimant, Mr. Futrell, and two of their acquaintances; the Housing Authority concluded that Claimant willfully committed fraud by failing to report that Mr. Futrell, a wage earner, resided with Claimant at the Kettle Street apartment in violation of Claimant's Section Eight family obligations. Further, the Housing Authority found that Mr. Futrell earned income in excess of Claimant's Section Eight eligibility.

The hearing officer relied extensively on a report by Timothy Cassel of the Department of Public Welfare, Office of Fraud and Abuse Investigation. Based on statements by Claimant, Mr. Futrell, and acquaintances of the couple, Mr. Cassel concluded in his report that Mr. Futrell resided with Claimant at least two nights per week and during periods of his unemployment. Based on information received from Mr. Futrell's employer, Mr. Cassel concluded that Mr. Futrell earned gross wages of $75,440.41 and unemployment compensation of $9,432 during a three year period between May, 1989 and March, 1992.

The hearing officer also considered the following documentary evidence: an Investigative Agency Report by James Porreca, stating, *inter alia*, that Mr. Futrell was seen entering the apartment without knocking; affidavits from an acquaintance and the owner/landlord of 407 Kettle Street, attesting to the presence of Mr. Futrell at the Kettle Street apartment on weekends and during his periods of unemployment; letters and a telephone message received by the agency lodging

4. The initial hearing took place in January, 1992, after which the hearing officer upheld the termination of Claimant's benefits. However, on appeal the trial court remanded the case to the Housing Authority for the purpose of developing the record. After the May, 1992 remand hearing, the hearing officer again upheld the termination of Claimant's benefits. However, as notice of the remand hearing was not given to Claimant's counsel, the court ordered a second remand hearing for attendance of Claimant's counsel. The order issuing from the second remand hearing is the subject of this appeal.

complaints against Claimant; a Confidential Employment Inquiry completed by Mr. Futrell's employer confirming Mr. Futrell's employment with the company; a report in a local newspaper[5] indicating Mr. Futrell's address as 407 Kettle Street; and certified mail including three letters, one of which was addressed to Mr. Futrell at 407 Kettle Street, and all of which were accepted by Mr. Futrell at that address.

At the hearing, Counsel for Claimant objected to the admission of the following evidence on the grounds that these exhibits contained inadmissible hearsay: the reports by Mr. Cassel and Mr. Porreca; the prior hearing transcript; the affidavits; and the letters and telephone message lodging complaints. The Housing Authority found Claimant's objections to the evidence unfounded under both 24 C.F.R. Section 882.216(b)(6)(iv)[6] and 2 Pa.C.S. Section 505.[7]

On appeal, the trial court upheld the Housing Authority's order finding no error of law or violation of constitutional rights and that all relevant findings of fact are supported by substantial evidence.

Pursuant to the United States Housing Act (USHA or the Act), the Department of Housing and Urban Development (HUD) has promulgated regulations, setting forth the responsibilities of participants. The HUD "Obligations of the Family" require participants to supply, as required by the housing authorities, information concerning family composition and household income. 24 C.F.R. § 882.118(a)(1).[8] The partici-

5. This was not admitted as an exhibit at the July 6, 1992 hearing.

6. The federal rules provide a relaxed standard for the admissibility of evidence: Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings. 24 C.F.R. § 882.216(b)(6)(iv).

7. The Pennsylvania rule provides:
    Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.
    2 Pa.C.S. § 505.

8. According to the "Obligations of the Family" provision found at Section 882.118(a)(1), the participating family must:

pant shall not commit fraud in connection with any federal housing program. 24 C.F.R. § 882.118(b)(2). In addition, a local housing authority may terminate housing assistance payments for a participant's knowing and willful failure to comply with any family obligations. 24 C.F.R. 882.210(d)(2).

Under USHA, Congress intended to facilitate the provision of low income housing by delegating to local public housing agencies the maximum amount of authority in the administration of their housing programs. 42 U.S.C. § 1437. However, local authorities must exercise their discretion consistently with the objectives of the Act. 42 U.S.C. § 1437.

The Altoona housing policy pertaining to the federal regulations provides that "no adult person(s) other than those listed on the lease and application shall live/stay in the unit other than on a temporary basis and/or not exceeding 30 days." (Exhibit A-7). Participants agree to report to the Housing Authority if this situation arises during the term of the lease. Failure to report additional adults living in the unit may result in eviction, lifetime loss of eligibility for housing assistance, repayment of the rent, and criminal charges.

■ At the outset, we reject Claimant's argument that the Altoona policy imposes an unconstitutional burden on her right to associational privacy and denies her due process of law. Claimant's argument is based on the premise that the Altoona policy creates an irrebuttable presumption that an individual who stays in a home for more than thirty days is an income-contributing member of the household. Claimant contends that such an irrebuttable presumption is not the least restrictive means of effectuating the Housing Authority's goals, violative of her rights of free association and privacy,

Supply such certification, release, information, or documentation as [the local housing agency] or HUD determine to be necessary, including the submission of Social Security Numbers and verifying documentation ..., the submission of signed consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies ..., and submissions required for an annual or interim reexamination of family income and composition.
24 C.F.R. § 882.118(a)(1).

and results in the revocation of her entitlement to Section Eight housing assistance without due process of law.

We disagree with Claimant's initial premise. The Altoona policy at issue in this case is a reporting requirement. It does not work a categorical exclusion of participants from Section Eight eligibility for permitting an individual to stay beyond the thirty-day limit; Section Eight eligibility is determined on an individualized basis based on the information reported to the Housing Authority. The failure to comply with the reporting requirements of the Altoona policy is grounds for termination, in harmony with the federal policy. *See McLaughlin v. Centre County Housing Authority,* 151 Pa.Commonwealth Ct. 292, 616 A.2d 1073 (1992) (failure to report additional income is grounds for termination of subsidy). Therefore, we agree with the trial court that the Altoona policy with respect to reporting additional adults living in the unit is a reasonable and necessary means of administering the federal housing assistance program, which requires that recipients meet a certain low income threshold in order to qualify for assistance.

■ Turning to Claimant's argument that the Housing Authority's decision is based on inadmissible hearsay, we initially determine that the Pennsylvania local agency law with respect to the admissibility of evidence controls. The hearing procedures of local agencies must comply with the federal regulation permitting the consideration of evidence without regard to admissibility under the rules of evidence applicable to judicial proceedings. 24 C.F.R. § 882.216(b)(6)(iv). Consistent with the federal rule, the applicable Pennsylvania rule governing the admissibility of evidence in local agency proceedings provides:

> Local agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of a reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.

2 Pa.C.S. § 554. This court has held, however, that "[t]he Hearsay Rule is not a technical rule of evidence but a basic, vital and fundamental rule of law which ought to be followed

by administrative agencies at those points in their hearings when facts crucial to the issue are sought to be placed upon the record." *Bleilevens v. Pennsylvania Civil Service Commission*, 11 Pa.Commonwealth Ct. 1, 5, 312 A.2d 109, 111 (1973). Accordingly, interpreting an identical rule applicable to Commonwealth agency adjudications, this Court has held:

> (1) Hearsay evidence, *properly objected to,* is not competent evidence to support a finding [in an administrative hearing]. ... (2) Hearsay evidence, *admitted without objection,* will be given its natural probative effect and may support a finding of the [hearing officer], *if it is corroborated by any competent evidence in the record,* but a finding of fact based solely on hearsay will not stand.

*Walker v. Unemployment Compensation Board of Review*, 27 Pa.Commonwealth Ct. 522, 527, 367 A.2d 366, 369–70 (1976) (emphasis in original) (citations omitted).

The objected to evidence is unquestionably hearsay. The Housing Authority did not refute that this evidence falls within no exception to the hearsay rule. As the objected to hearsay evidence cannot support a finding of the Housing Authority, we must determine whether the Housing Authority's findings are supported by substantial independent evidence or are otherwise tainted by the admission of the objected to hearsay evidence.

Applying the *Walker* rule to this case, we find that substantial, competent evidence supports the decision of the Housing Authority to terminate Claimant's rental subsidy. The remaining exhibits admitted without objection at the July 6, 1992 hearing indicate that Claimant was aware of the family composition and income reporting requirements; that Claimant did not initially include Mr. Futrell on her lease documents but later added his name in January, 1992; that Mr. Futrell received and signed for certified mail at Claimant's home; and that Mr. Futrell has been employed by Enterprise Stone and Lime Company from 1987 to the present. This evidence is adequately corroborated by the July 6, 1992 testimony of

Claimant and Mr. Futrell and; therefore, can be given its natural and probative effect.[9]

Additionally, Claimant testified that, although weeks may have passed in which Mr. Futrell did not visit Claimant's home, Mr. Futrell visited on weekends, usually staying with Claimant two nights per week. July 6, 1992 Hearing, N.T. at 20. Claimant also testified that during Mr. Futrell's periods of unemployment, he stayed with Claimant at least two days per week. *Id.* at 31, 37. Claimant acknowledged that the telephone bill was in Mr. Futrell's name. *Id.* at 22. Claimant also testified that Mr. Futrell left clothing at her home, occasionally ate meals there and received telephone calls there. *Id.* at 30–34. In addition to child support, Claimant testified that Mr. Futrell occasionally bought clothing for Claimant and the children and gave them "a few bucks here and there." *Id.* at 21.

Although Mr. Futrell testified that he lived elsewhere, he acknowledged babysitting Claimant's children at the Kettle Street apartment when Claimant was not home. *Id.* at 68. In addition to child support, Mr. Futrell testified that he bought clothing for Claimant and the children, took them out for dinner, and gave Claimant approximately twenty to sixty dollars in cash per month. *Id.* at 74–75.

Further, Patricia Gates, a next-door neighbor, testified that she saw Mr. Futrell at Claimant's home on weekends. *Id.* at 50.

Based on the documentary evidence admitted without objection and the direct testimony of Claimant, Mr. Futrell, and Patricia Gates, we conclude that the Housing Authority could reasonably have inferred that, during the time that Claimant received Section Eight assistance, Mr. Futrell was earning an income and living/staying with Claimant in excess of the thirty day limit. Further, we conclude that this evidence supports the Housing Authority's finding that Claimant knowingly

9. We need not pursue a hearsay analysis of the exhibits admitted without objection at the July 6, 1992 hearing to the extent that the relevant evidence contained therein is corroborated by independent evidence in the record.

failed to report this information to the Housing Authority at the time that she applied for housing assistance.

With respect to Claimant's argument that the admission of the objected to hearsay evidence tainted the decision of the Housing Authority, we acknowledge that the adjudication of a local agency cannot solely be based on evidence which is unfairly prejudicial to one of the parties. *Kazmarek v. New Bethlehem Borough Council,* 84 Pa.Commonwealth Ct. 19, 478 A.2d 514 (1984). However, we do not believe that the admission of the objected to evidence in this case was so prejudicial as to require reversal. The findings of the Housing Authority are amply supported by independent evidence.

We find that the Housing Authority properly concluded that, in violation of Section Eight policy, Claimant knowingly and willfully failed to report accurately her family composition and income. Therefore, we conclude that the Housing Authority did not abuse its discretion in terminating Claimant's Section Eight housing subsidy.

The Housing Authority recommended recovery of the Section Eight payments made on Claimant's behalf.[10] Because the Housing Authority's order does not contain this recommendation, we decline to address this issue. We note, however, that the Housing Authority's recommendation to recover payments is based upon a finding that Mr. Futrell earned an income in excess of Claimant's eligibility. This finding is based upon uncorroborated hearsay evidence [11] and is, therefore, not supported by substantial evidence.

We affirm the trial court's order.

10. The Housing Authority may condition Claimant's reinstatement into the Section Eight program upon the repayment of this sum. 24 C.F.R. § 882.210(b)(1).

11. Wage information received from Mr. Futrell's employer was admitted without objection at the July 6, 1992 hearing. We note that absent testimony as to the identity and mode of preparation of this document, the business records exception to the hearsay rule does not apply. 42 Pa.C.S. § 6108.

## ORDER

AND NOW, June 3, 1993, the order of the Court of Common Pleas of Blair County, dated August 17, 1992, is hereby affirmed.