Thelma Oaks BROUGHTON

v.

HOUSING AUTHORITY OF the CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 19, 2000.

Decided June 30, 2000.

As Amended July 5, 2000.

Dianna C. Wyrick, Pittsburgh, for appellant.

No appearance entered for appellee.

Before COLINS and McGINLEY, JJ., JIULIANTE, Senior Judge.

COLINS, Judge.

The Housing Authority of the City of Pittsburgh (Housing Authority) appeals from the May 3, 1999 order of the Court of Common Pleas of Allegheny County, sustaining an appeal filed by Thelma Oaks Broughton (Broughton) from the Housing Authority hearing examiner's denial of a grievance she filed against the Housing Authority for its assessment of back rental charges. We reverse.

The background of this appeal, as summarized from the hearing examiner's findings of fact, follows. Broughton and other similarly situated individuals lived in hous-

ing owned and operated by the Housing Authority and participated in certain community programs funded by Public Housing Drug Elimination Grants (DEG) through Housing and Urban Development (HUD). One such community program was the Mentoring of Mothers (MOMS), established at the Arlington Heights Community and funded by money received through DEG funds. The record indicates that Broughton and others were recruited as volunteers to assist mothers living in Arlington Heights to work as mentors and baby-sitters, and that Broughton, who worked as a MOMS supervisor, was also among those hired by Steven Tyson of the Housing Authority to be responsible for program administration and operation.

Participants in MOMS received 13 weeks of initial training in various subject areas, such as organizational management, child care safety, and conflict resolution/mediation, along with training twice a month from other entities such as the Carnegie Library, and Women's Shelter, which training was often coordinated by MOMS supervisors. Volunteers in the MOMS programs received, upon presenting adequate documentation of expenditures, monthly amounts of money ranging from $150.00 to $700.00 for their participation. The findings of fact indicate that there is no record of the Housing Authority or the resident council issuing or receiving an IRS wage statement, W 2, or 1099 form to themselves or the volunteers. Another volunteer supervisor, Tammara Brown, alleged that she was advised by Housing Authority program coordinators that the aforementioned monies would be deemed a stipend and not income for the purpose of rent calculation, and that the volunteers were not obligated to inform Housing Authority management about payments they received. Broughton and Brown aver that in reliance upon the assurances of said program coordinators, they advised the volunteers that the payments they received for the volunteer participation would not affect the Housing Authority's calculation of their rent.

Subsequently, upon a request from HUD on February 20, 1997, the Housing Authority was instructed to investigate reports that compensation paid to resident volunteers in various DEG programs was being excluded from calculation of the residents' rent. The investigation included reviewing internal Housing Authority accounting records of payments made to Housing Authority DEG funded programs. As a result of this audit, it was determined that some resident/participants of such DEG-programs had not reported payments received for their participation to their community managers for the purpose of rental calculations. The Housing Authority therefore authorized its community managers to assess back charges to these residents.

As one such resident, Broughton filed a grievance with the Housing Authority concerning the assessment, and on August 4, 1998, the Housing Authority held a grievance hearing. By letter and memorandum decision dated August 19, 1999, Broughton's grievance was denied, and the assessed rental back charges were upheld. Broughton then filed an appeal to the Court of Common Pleas of Allegheny County (Trial Court). On May 3, 1999, the Trial Court, basing its decision solely upon the record created before the Housing Authority, reversed the latter's determination and found that Broughton did not owe the Housing Authority back rent. This appeal followed.

■ Where, as here, a full and complete record of the proceedings before the Housing Authority was made, we must affirm the decision of the Housing Authority unless we find that the adjudication is in violation of constitutional rights, or is not in accordance with the law, or that any finding of fact made by the Housing Authority is not supported by substantial evidence. *Zajac v. Altoona Housing Authority*, 156 Pa.Cmwlth. 209, 626 A.2d 1271 (1993), *petition for allowance of appeal denied,* 537 Pa. 627, 641 A.2d 591 (1994).

On appeal, the Housing Authority contends that the Trial Court committed an error of law in reversing its decision and, in effect, usurped the hearing officer's authority to exercise discretion in ruling on Broughton's grievance. In this regard, the Housing Authority emphasizes that the hearing officer, not the Trial Court, observed witnesses, weighed the evidence, and made credibility and admissibility determinations in reaching its decision. The Housing Authority also maintains that the hearing officer properly rejected Broughton's argument that promissory estoppel principles barred the Housing Authority from charging her for unpaid back rent, because: (1) the Housing Authority never advised Broughton that she was required to report monies received from her participation in DEG programs to her housing manager; (2) the alleged statements made to Broughton by Housing Authority personnel were supported only by impermissible hearsay evidence, which was correctly rejected by the hearing officer, but erroneously accepted by the Trial Court; and (3) Broughton had been a Housing Authority resident long enough to know that she could not reasonably rely upon such alleged statements without further confirmation.

Upon review, we concur with the Housing Authority's assertions that the Trial Court erred and abused its discretion in reversing the Housing Authority's decision. Substantial evidence of record does not support the Trial Court's May 3, 1999 decision to sustain Broughton's appeal. The Trial Court's abbreviated opinion written in support of its decision relies upon the doctrine of promissory estoppel, stating that "the record clearly establishes that HACP employees told the MOMS volunteers that the money they were receiving from the program is not considered income" for rent calculation, but rather, a stipend. As a result, the Trial Court concluded that the MOMS volunteers reasonably relied upon the foregoing assurances in not reporting these amounts to their supervisors.

We disagree in that the record does not "clearly" establish that Housing Authority personnel gave the volunteers these alleged assurances. Specifically, the only evidence presented by Broughton to support her claim of detrimental reliance consisted of written statements allegedly from various Housing Authority employees who never appeared to testify. The Housing Authority objected to the admission of these written statements into evidence on the basis of hearsay, which objection the hearing officer sustained, finding that to admit these statements in the absence of the declarants would unduly prejudice the Housing Authority by depriving it of the right to cross-examine them. In this regard, the hearing officer's decision notes that although at least some of the aforementioned declarants resided in or around the Pittsburgh area and could have been called to testify, Broughton failed to do so and presented no reason for the declarants' alleged unavailability.

The Trial Court failed to address the foregoing hearsay problem, which is a significant one, as it was in *Zajac,* wherein this Court unequivocally stated,

'[t]he Hearsay Rule is not a technical rule of evidence but a basic, vital and fundamental rule of law which ought to be followed by administrative agencies at those points in their hearings when facts crucial to the issue are sought to be placed upon the record.' ... Accordingly, interpreting an identical rule applicable to Commonwealth agency adjudications, this Court has held:

(1) Hearsay evidence, *properly objected to,* is not competent evidence to support a finding [in an administrative hearing].... (2) Hearsay evidence, *admitted without objection,* will be given its natural probative effect and may support a finding of the [hearing officer], *if it is corroborated by any* compet*ent evidence in the record,* but a finding of fact based solely on hearsay will not stand.

*Zajac,* 626 A.2d at 1275, (quoting *Bleilevens v. Pennsylvania Civil Service Commission,* 11 Pa.Cmwlth. 1, 312 A.2d 109, 111 (1973), and *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Cmwlth. 522, 367 A.2d 366, 369–70 (1976) (citations omitted)). In the present matter, the written statements that Broughton attempted to submit were unarguably hearsay and did not qualify as any exception to the hearsay rule. Moreover, Broughton did not present any competent evidence to corroborate the alleged written statements of the Housing Authority employees. Therefore, Broughton's detrimental reliance argument rests solely upon her own allegations and those of her coworkers, all of which are unsupported by any objective, independent evidence.

Accordingly, based upon the foregoing discussion, the Trial Court's order is reversed.

### ORDER

**AND NOW,** this 30th day of June 2000, the May 3, 1999 order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.