Sharon DEGELMAN

v.

HOUSING AUTHORITY OF the CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 26, 2013.

Decided June 10, 2013.

Eugene G. Berry, Pittsburgh, for appellant.

Mary E. Droll, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY SENIOR Judge FRIEDMAN.

The Housing Authority of the City of Pittsburgh (Housing Authority) appeals from the September 28, 2012, order of the Court of Common Pleas of Allegheny County (trial court), which reversed the decision of a hearing officer terminating Sharon Degelman's housing assistance benefits received pursuant to Section 8 of the United States Housing Act of 1937(Act), *as amended,* 42 U.S.C. § 1437f, because the hearing officer capriciously disregarded substantial evidence. We affirm.

On April 6, 2008, police officer David Sisak searched Degelman's apartment located at 1412 North Murtland Avenue (Property) pursuant to a search warrant. The search yielded six empty heroin stamp bags, a rubber tie band, nine cotton balls, two crack pipes, and used hypodermic needles. (*See* Inventory of Seized Property; Police Report; N.T., 7/14/08, at 2–3.) Degelman pled guilty to a charge of disorderly conduct. (N.T., 7/14/08, at 13.)

On May 1, 2008, the Housing Authority issued a notice to Degelman terminating her housing assistance benefits pursuant to 24 C.F.R. § 982.553(b)(1)(ii) because she had engaged in drug-related criminal activity in violation of 24 C.F.R. § 982.551(*l* ). Degelman requested an informal grievance hearing.

A hearing officer held the grievance hearing on July 14, 2008. Officer Sisak testified about the extent of drug paraphernalia found at the Property. (N.T., 7/14/08, at 2, 4.) He stated that the Property was "probably the worst place I have ever seen, including abandoned houses[,] since I've been on the job" and that "there were about 2,000 needles just everywhere." (*Id.*)

Degelman testified that on April 6, 2008, she left the Property to go to work at 4:15 p.m. and returned home around 8:40 p.m. (N.T., 7/14/08, at 10.) While Degelman acknowledged the disorderly conduct charge, she denied participating in any drug-related activity and denied having drug paraphernalia at the Property. (*Id.* at 11, 13.) Degelman previously suspected that intruders had entered the Property because she was missing some personal belongings, and she had reported to her landlord that the lock on her back door was broken. (*Id.* at 12.)

Richard Elser, the maintenance man for the Property, testified that he visited the Property in the early afternoon on April 6, 2008, to fix the back door. (N.T., 7/14/08, at 5.) He stated that he may have heard voices inside before entering the Property. (*Id.* at 6.) He recalled that the back door was broken and un-lockable. (*Id.*) He noted that Degelman previously reported break-ins at the Property. (*Id.* at 7.) He believed that Degelman did not use drugs. (*Id.* at 8.) Finally, he contradicted Officer Sisak's testimony, stating:

I wanted to comment about those 2,000 needles laying everywhere. I go into [Degelman]'s apartment at least once a week. She's always calling saying that this is broke; that is broke; could you change the lightbulb[,] etc. If there were 2,000 needles laying around, I would have seen them. I mean, she keeps a clean apartment.

(*Id.* at 9.)

The hearing officer issued a decision denying the grievance because Degelman had engaged in drug-related criminal activity. Degelman appealed to the trial court, which affirmed, concluding that sufficient evidence supported the hearing officer's decision. Degelman appealed to this court.

On September 2, 2009, this court vacated the order of the trial court and remanded for further findings of fact. *See Housing Authority of the City of Pittsburgh v. Degelman, 2009 WL 9096551* (Pa.Cmwlth., No. 228 C.D.2009, filed September 2, 2009), slip op. at 7. The hearing officer held a second hearing on April 9, 2010. Degelman and Officer Sisak again testified; Elser did not.

On April 19, 2010, the hearing officer issued a second decision denying Degelman's grievance. Degelman appealed to the trial court, which affirmed. Degelman again appealed to this court.

On June 30, 2011, this court found that the hearing officer had exceeded the scope of the prior remand. *Degelman v. Housing Authority of the City of Pittsburgh* (Pa.Cmwlth., No. 2801 C.D.2010, filed June 30, 2011), slip op. at 4. Accordingly, this court vacated the order and remanded for additional findings of fact, requiring that "[i]n making such findings, the hearing officer shall disregard all evidence presented at the April 9, 2010, hearing." *Id.* at 5.

■ On December 6, 2011, the hearing officer denied the grievance for the third time. Once again, Degelman appealed to the trial court. On December 28, 2012, the trial court reversed, finding that the hearing officer had capriciously disregarded substantial evidence. The Housing Authority appealed to this court.[1]

On appeal, the Housing Authority argues that the trial court erred in concluding that the hearing officer capriciously disregarded competent evidence.[2] We need not reach the capricious disregard issue, however, because we conclude that the hearing officer committed an error of law. Therefore, we affirm the trial court's decision, but we do so on different grounds.

Section 8 of the Act provides housing at reduced costs to low income families. The Act's regulations list the obligations of participating families, including:

(*l*) Crime by household members. The members of the household may not engage in *drug-related criminal activity* or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises (see § 982.553).

24 C.F.R. § 982.551(*l*) (emphasis added). Further, 24 C.F.R. § 982.553(b)(1)(iii) authorizes the Housing Authority to terminate assistance if "any family member has violated the family's obligation under § 982.551 not to engage in any *drug-related criminal activity*." (emphasis added).

In *Romagna v. Housing Authority of Indiana County,* 2012 WL 3026386 (Pa. Cmwlth., No. 1648 C.D.2011, filed July 13, 2012), this court summarized the applicable federal regulations and determined that possession of drug paraphernalia is not "drug-related criminal activity."[3] In *Romagna,* the court stated that

[t]he Housing Authority's definition of drug-related criminal activity does not specify that drug paraphernalia is "drug-related." Nor does it use language broad enough to sweep possession of paraphernalia into the phrase "drug-related criminal activity."

*Romagna,* 2012 WL 3026386 at *4.[4]

■ Here, a dispute exists about the extent of drug paraphernalia found at the

1. Our review is limited to determining whether the findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Zajac v. Altoona Housing Authority,* 156 Pa.Cmwlth. 209, 626 A.2d 1271, 1272 (1993).

2. The Housing Authority contends that the trial court erred in finding that the hearing officer capriciously disregarded three items of evidence: (1) testimony from Mr. Elser; (2) inconsistencies in Officer Sisak's testimony; and (3) the Property's un-lockable back door. *See Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 571 Pa. 189, 203, 812 A.2d 478, 487 (2002) ("[R]eview for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court.").

3. An unreported panel decision of this court may be cited for its persuasive value, but not as binding precedent. Commonwealth Court Internal Operating Procedures § 414, 210 Pa. Code § 69.414.

4. The regulations define "drug-related criminal activity" as "the illegal manufacture, sale, distribution, or use of a *drug,* or the possession of a *drug* with intent to manufacture, sell, distribute or use the *drug.*" 24 C.F.R. § 5.100 (emphasis added). The regulations further define "drug" as "a *controlled substance* as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§ ]802)." 24 C.F.R. § 5.100 (emphasis added).

The Controlled Substances Act defines "controlled substance" as:
a *drug* or other substance, or immediate precursor, included in schedule I, II, III,

Property and whether the drug paraphernalia belonged to Degelman or was left behind by intruders. However, under the applicable federal regulations, a "drug-related criminal activity" requires the actual use or possession of a *drug*, not drug paraphernalia. Thus, a disorderly conduct conviction[5] related to drug paraphernalia being found at the Property provides insufficient cause to terminate Degelman's housing assistance benefits under 24 C.F.R. § 982.553(b)(1)(iii).

Given our determination, we need not address the Housing Authority's contention that the trial court erroneously applied the capricious disregard standard.

Accordingly, we affirm the trial court's order.

### ORDER

AND NOW, this *10th* day of *June*, 2013, we hereby affirm the September 28, 2012, order of the Court of Common Pleas of Allegheny County.

---

IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

21 U.S.C. § 802(6) (emphasis added). The Controlled Substances Act defines the term "drug," incorporating "the meaning given that term by section 321(g)(1) of this title." 21 U.S.C. § 802(12). In turn, 21 U.S.C. § 321(g)(1) states:

> The term "drug" means (A) articles recognized in the official United States Pharmacopœia, official Homœopathic Pharmacopœia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

None of these definitions mentions drug paraphernalia.

5. While Degelman was arrested "on a charge of possession of drug paraphernalia, the Office of the District Attorney of Allegheny County agreed to a plea bargain to a lesser charge of disorderly conduct." *Housing Authority of the City of Pittsburgh v. Degelman*, 2009 WL 9096551, at *4 (Pa.Cmwlth., No. 228 C.D.2009, filed September 2, 2009).