# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| BCJ Management, L.P. | : | |
| | : | |
| v. | : | No. 1168 C.D. 2016 |
| | : | Submitted: March 31, 2017 |
| Stacie D. Cotton, | : | |
| Appellant | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: July 10, 2017**

Stacie D. Cotton (Tenant) appeals an order of the Court of Common Pleas of Allegheny County (trial court)[1] denying post-trial relief and granting possession of her housing unit to BCJ Management L.P. (Landlord) based on her violation of a settlement agreement.  Tenant contends she did not breach the agreement, and the trial court erred as a matter of law in construing its terms.  Specifically, she asserts Landlord failed to establish her conduct affected the health, safety or right to peaceful enjoyment of the community.  Upon review, we affirm.

## I. Background

Tenant leased premises located in Oak Hill Apartments, a public housing community, at 336 Oak Hill Drive, Oak Hill Apartments, Pittsburgh, (Unit) from Landlord pursuant to the United States Housing Act of 1937, as amended, 42 U.S.C. §1437 (Housing Act).  In July 2015, Landlord filed a complaint against

---

[1] The Honorable Michael A. Della Vecchia presiding.

Tenant in a magisterial district court seeking to recover possession of the Unit for breach of lease conditions other than non-payment of rent.[2]

After attempting settlement, Landlord filed a notice of appeal as well as a complaint in the trial court. The parties resolved the dispute through arbitration, which was memorialized in a settlement agreement and mutual release (Settlement). A subsequent consent order, filed in April 2016, incorporated the Settlement.

In May 2016, Tenant was involved in altercations in and around the Oak Hill Apartments that escalated into physical violence and threats (Incident). As a result, Landlord filed a motion for an evidentiary hearing with the trial court, asking it to find Tenant in default of the Settlement.

A month later, the trial court held a hearing. Three law enforcement officers who responded to the Incident, and a resident, Maxine L. Thomas (Thomas), testified about the Incident. Tenant testified about the Incident and the Settlement.

Officers of Oak Hill Public Safety, Caitlin Gathers and James Schenkel, observed part of the Incident (collectively, Officers). Officers described Tenant as intoxicated and agitated, requiring her restraint when she lunged at others.

---

[2] Tenants who lease public housing are subject to lease conditions designed to protect resident safety. For example, leases may be terminated for criminal activity of tenants or other co-habitants. Powell v. Hous. Auth. of City of Pittsburgh, 812 A.2d 1201 (Pa. 2002) (holding public housing authority may terminate Section 8 benefits for violent crime of family member without having to prove that the activity threatens health, safety or right to peaceful enjoyment).

2

She yelled profanities and threatened other residents. Officers called the Pittsburgh Police.

Pittsburgh Police Officer Igor Boyko responded to Officers' call. He testified Tenant was highly intoxicated and involved in the Incident.

Thomas testified Tenant started a fight the night of the Incident with Monique Poole (Mo) when she slapped Mo's face in Thomas' residence. Mo did not retaliate, and Thomas asked both women to leave. Tenant left slightly later as "she got a bit hysterical." Tr. Ct. Hr'g, Notes of Testimony (N.T.), 6/23/16, at 28.

Based on the evidence, the trial court ruled Tenant breached Section III, Paragraph 3 of the Settlement,[3] and it evicted Tenant from the Unit (June 24 Order). The trial court further granted possession of the Unit to Landlord. Tenant filed a motion with the trial court for post-trial relief, which was denied. Then, Tenant appealed to this Court.[4]

---

[3] Section III, Paragraph 3 of the Settlement states: "[Tenant] shall not engage in abuse or a pattern of abuse of alcohol that affects the health, safety or right to peaceful enjoyment of the premises of Oak Hill by other tenants." See Attachment to Notice of Appeal.

[4] For the first time, in its brief, Landlord challenges our jurisdiction. Appellee's Br. at 1. Landlord did not challenge jurisdiction when this Court heard and decided the Tenant's application for emergency relief pending appeal, and its objection is waived as untimely. Pa. R.A.P. 741; 42 Pa. C.S. §704. Further, judicial economy favors retention. Commonwealth v. Snyder, 829 A.2d 783 (Pa. Cmwlth. 2003). Also, Landlord is admittedly an "instrumentality of a public housing agency," Answer to Emergency Application at ¶111, and such agencies are subject to this Court's jurisdiction. See Gray v. Allegheny Cnty. Hous. Auth., 8 A.3d 925 (Pa. Cmwlth. 2010).

Tenant subsequently filed a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), arguing she did not engage in conduct that violated the Settlement. She claimed the trial court erred in awarding possession of the Unit to Landlord predicated on her alleged violation.

Thereafter, the trial court issued an opinion supporting its order. Pa. R.A.P. 1925(a). It reasoned Tenant's admitted intoxication and violence during the Incident, supported by the law enforcement officers' testimony, established her violation of the Settlement. Tr. Ct., Slip Op., 9/6/16, at 6-7.

Shortly after filing her appeal, Tenant received a writ of possession from the trial court, setting the eviction date for August 15, 2016.[5] Tenant filed an emergency motion with the trial court to stay its June 24 Order. After argument, the trial court denied the motion.

Tenant then filed an emergency application to stay eviction pending appeal and to set aside the writ of possession with this Court (Emergency Application). After a telephonic hearing, and viewing the record in the light most favorable to Landlord as the prevailing party, this Court denied the Emergency Application. BCJ Mgmt., L.P. v. Cotton (Pa. Cmwlth., No. 1168 C.D. 2016, filed August 8, 2016) (single j. op., Simpson, J.) (unreported).

_____

[5] It is unclear whether Tenant was in fact evicted on this date. Appellee's Br. at 25.

## II. Discussion

On appeal,[6] Tenant argues the trial court erred in interpreting the Settlement. She contends neither her intoxication nor the Incident is sufficient to establish a violation; rather, Landlord needed to prove she caused the Incident that, in turn, affected the health, safety or peaceful enjoyment of the premises. She asserts the trial court's failure to find a causal relationship between her intoxication and the Incident is grounds to vacate its order and to award her possession of the Unit.

Landlord argues the appeal became moot when Tenant lost possession. On the merits, it asserts the trial court construed the Settlement pursuant to its terms.

### A. Mootness

First, we consider Landlord's contention that this appeal is moot because the trial court served Tenant with a writ of possession evicting her from the Unit.

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. Pilchesky v. Lackawanna Cnty., 88 A.3d 954 (Pa. 2014). An issue is moot if, in ruling on the issue, the court cannot enter an order that has any legal force or effect. Id. Where an appeal is mooted by a change in intervening facts or law, the appeal is subject to dismissal. Commonwealth v. Pruitt, 41 A.3d 1289 (Pa. 2012) (per curiam).

---

[6] We review the trial court's order to determine whether competent evidence supports the trial court's findings or whether the trial court committed legal error. John Spearly Constr., Inc. v. Penns Valley Area Sch. Dist., 121 A.3d 593 (Pa. Cmwlth. 2015). Our review of contract interpretation issues is plenary. Wertz v. Manorcare of Carlisle PA, LLC, 124 A.3d 1248 (Pa. 2015).

5

However, courts recognize three exceptions to the mootness doctrine. We permit a decision on an otherwise moot appeal when: (1) the appeal presents a question of great public importance; (2) the appeal presents a question that is capable of repetition but likely to evade review; or, (3) a party to the appeal will suffer some detriment from the decision appealed. Pub. Defender's Office of Venango Cnty. v. Venango Cnty. Court of Common Pleas, 893 A.2d 1275 (Pa. 2006).

Significantly, there is no stipulation of fact or confirmation by the parties that Landlord assumed possession and evicted Tenant. It is therefore not clear on this record whether Tenant and her family continue to possess the Unit despite the award of possession to Landlord.

Regardless, Tenant's involuntary departure from the Unit does not render her appeal moot. Her circumstances as a recipient of housing assistance under the Housing Act trigger the third exception to the mootness doctrine.

Under the Housing Act, the U.S. Department of Housing and Urban Development (HUD) promulgated regulations that, in effect, restrain conduct of tenant-participants. HUD authorizes public housing authorities, and, through leases, owners of subsidized property, to impose tenancy conditions that advance the Housing Act's purpose of providing recipients "with decent, safe, and sanitary housing." Powell v. Hous. Auth. of Pittsburgh, 812 A.2d 1201, 1203 (Pa. 2002).

6

HUD regulations allow a public housing authority to deny admission or terminate assistance "if any member of the family [was] evicted from federally assisted housing in the last five years." 24 C.F.R. §982.552(c)(1)(ii). Specifically, the application asks: "Have you or any other person/s listed on this Pre-Application ever been evicted from Low Income Public Housing or Section 8 Housing?" See Pre-application for Housing Authority of Pittsburgh at http://www.hacp.org/housing-options/apply-for-housing/liph-pre-application (last visited May 31, 2017). Thus, allowing Tenant's eviction to stand would cause her to suffer a detriment. See, e.g., AHRCO-Monview Heights v. Eubanks (Pa. Super., No. 671 WDA 2014, filed February 18, 2015) (unreported), 2015 WL 7571431 (tenant's breach of subsidized housing lease causes future detriment as exception to mootness doctrine).

Because our decision impacts Tenant's ability, and that of her family, to obtain housing assistance for up to five years, her appeal is not moot.

**B. Merits/Settlement**

Turning to the merits, the trial court's construction of the Settlement, and whether Tenant violated its terms, is central to this appeal. The operative paragraph of the Settlement provides: "[Tenant] shall not engage in abuse or a pattern of abuse of alcohol that affects the health, safety or right to peaceful enjoyment of the premises of Oak Hill by other tenants." See Section III, ¶ 3 of the Settlement. HUD regulations contain the same language as that at issue here: "no member of the household [shall] engage[] in an abuse or pattern of abuse of alcohol that affects the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 C.F.R. §966.4(f)(12)(iii); see also 42 U.S.C. §13662(a)(2).

7

Here, the trial court incorporated the Settlement into a consent decree.[7] "A consent decree is a contract which has been given judicial sanction, and, as such, it must be interpreted in accordance with the general principles governing the interpretation of all contracts." Com. ex rel. Kane v. UPMC, 129 A.3d 441, 463 (Pa. 2015) (citations omitted). In interpreting contract terms, the cardinal rule is to ascertain the intent of the contracting parties. Lesko v. Frankford Hosp.–Bucks Cnty., 15 A.3d 337, 342 (Pa. 2011). If contract terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the parties' intent. Kripp v. Kripp, 849 A.2d 1159 (Pa. 2004). If, however, the terms are ambiguous, we may consider extrinsic evidence to ascertain their meaning. Murphy v. Duquesne Univ. of The Holy Ghost, 777 A.2d 418 (Pa. 2001). A contract's terms are considered ambiguous "'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" UPMC, 129 A.3d at 463 (citation omitted).

We agree with Landlord that the paragraph at issue requires only two elements for breach: (1) abuse of alcohol; and, (2) such abuse affects the health, safety, or right to peacefully enjoy the premises. The Settlement thus prohibits Tenant's abuse of alcohol that affects other tenants' peaceful enjoyment. As such, an abuse of alcohol that falls short of a "pattern of abuse" comes within the express prohibition of the Settlement. Such a reading is consistent with the plain terms of

---

[7] Tenant was represented by counsel when she executed the Settlement. Tr. Ct. Hr'g, Notes of Testimony, 6/23/16, at 47.

8

the Settlement as well as the prior litigation context within which the Settlement arose.

As to the first element, the record supports Tenant's intoxication. Officers testified Tenant "had glassy eyes," and smelled of alcohol. N.T. at 13. Officer Boyko also testified Tenant exhibited signs of intoxication, including slurred speech and an unsteady gait. N.T. at 51. Relevant here, Tenant does not dispute her intoxication, or that she "abused" alcohol on the night of the Incident. Appellant's Br. at 10 ("when [Tenant] moved for a directed verdict, arguing that [Landlord] had not shown that [Tenant's] abuse of alcohol caused danger to anyone….") (emphasis added).

As to the second element, we consider the plain meaning of "affect." Consulting the dictionary definition, "affect" means: "to have an influence on; bring about a change in." AM. HERITAGE DICTIONARY 84 (2d coll. ed. 1985).

In this context, the record similarly supports that Tenant engaged in conduct that had an influence on the peaceful enjoyment of the premises by other tenants. Officers testified consistently as to Tenant's extremely unruly and threatening conduct when they arrived on the scene. N.T. at 6, 10, 12. Officer Gathers testified Tenant needed to be physically restrained. N.T. at 13. Officer Schenkel corroborated that another male on the scene had to hold Tenant to prevent her from lunging toward other tenants in Oak Hill Apartments. N.T. at 6.

9

Moreover, Tenant acknowledged her participation in the Incident to which Officers responded. Tenant admitted she hit Mo, another tenant, and Tasha Kyte immediately prior to the escalation of the Incident outside Thomas' unit. R.R. at 45-46. Specifically, she threatened others, yelling "F**k you, n**gers. Me and my people is going to come up in here." N.T. at 10 (Schenkel).

Tenant does not dispute her intoxication at the time of the Incident. Tenant also does not dispute her involvement in the Incident. She disputes only her responsibility in "causing" the Incident.

Critically, although Tenant emphasizes the language in the Settlement is the same as that contained in federal regulations, she cites no authority supporting her construction requiring causation. Further, we see no basis for construing a tenant's obligations so generally.

Breach of the Settlement does not hinge on whether Tenant caused the Incident to which Officers and Pittsburgh Police responded. Tenant's unruly behavior was a significant part of, even if not the sole cause of, the Incident that resulted in a call for police assistance. Her participation in such a public disturbance suffices.

The record supports the trial court's findings that Tenant was intoxicated, and engaged in certain conduct while intoxicated. This conduct included hitting other persons in the Oak Hill Apartments, using profanity, and lunging toward others when police responded to the Incident. As the trial court

10

explained, "[Tenant] was highly intoxicated in the early morning hours of May 22, 2016, that she was involved in a physical altercation, that she needed to be physically restrained by law enforcement, that she continued to use profanity and lunge at others present even after the police arrived to restore order. … [T]hese acts are contrary to the [Settlement]." Tr. Ct., Slip Op. at 6-7. This Court agrees.

Tenant's admitted conduct on the night of the Incident, and the conduct Officers observed establishes that she participated in the Incident. Shouting of profanities, making verbal threats, and unruly outbursts necessitating restraint comprise Tenant's conduct. Tenant does not deny she engaged in this conduct. Nonetheless, she asks this Court to excuse it based on the circumstances.

That Tenant was found under a "pile of people … being roughed up," N.T. at 5 (Schenkel), when Officers responded to the Incident does not relieve her of the consequences of her actions. The Settlement offers no exception for self-defense or provocation. Thus, whether Tenant initiated the Incident by striking first, or responding in kind, is immaterial to finding her in breach.

No matter her provocation, Tenant engaged in conduct— hitting other residents, shouting profanities, verbal threats, and lunging toward those involved in the Incident— while she was intoxicated, that affected peaceful enjoyment of the premises. The trial court did not need to find Tenant caused the Incident in order to conclude Tenant breached the Settlement.

11

### III. Conclusion

Well-supported by the record, we uphold the trial court's conclusion that Tenant breached the Settlement.  Accordingly, we affirm.


                _____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BCJ Management, L.P.             :
                                     :
               v.               :      No. 1168 C.D. 2016
                                     :
Stacie D. Cotton,              :
                Appellant     :

## **O R D E R**

**AND NOW**, this 10th day of July, 2017, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

<br>
<br>

_____
ROBERT SIMPSON, Judge